**IN THE**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

SABRINA TAPP-HARPER,          *

      *Plaintiff,*        *

      v.            *     No. 1: 24-cv-002498-ABA

                   *

SHERIFF SAMUEL COGEN,      *

      *Defendant.*      *

    *    *    *    *    *    *    *    *    *    *    *    *

**DEFENDANT SHERIFF SAM COGEN'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

      Defendant, Sheriff Sam Cogen, submits this memorandum in support of his motion to dismiss, or in the alternative motion for summary judgment.

**Table of Contents**

**Facts and Legal Proceedings** ............................................................................. 2

   **Factual Background** ...................................................................................... 2

   **Pre-Litigation Activities** .............................................................................. 4

   **Legal Proceedings** ........................................................................................ 4

**Legal Standard** ................................................................................................. 5

**Argument** .......................................................................................................... 6

   I.   MS. TAPP-HARPER RELEASED ALL CLAIMS PREDATING AUGUST 18, 2022 ....... 6

   II.   MS. TAPP-HARPER CANNOT INVOKE 42 U.S.C. §§ 1981 OR 1983 AGAINST SHERIFF COGEN, A STATE ACTOR ................................................................ 8

     A.   Sheriff Cogen, in His Official Capacity, is Not a "Person" under 42 U.S.C. § 1983. ....................................................................................... 8

     B.   Sheriff Cogen, as a State Actor, Cannot Be Sued Under 42 U.S.C. § 1981. .. 8

   III.   MS. TAPP-HARPER FAILS TO STATE A CLAIM FOR ANY EVENTS AFTER THE AUGUST 18, 2022 SETTLEMENT AGREEMENT ................................................. 9

**A.    Ms. Tapp-Harper Fails to State Claims of Race Discrimination Under Title VII and 42 U.S.C. § 1983.**.................................................................................................9

**B.    Ms. Tapp-Harper Fails to State Claims of Gender Discrimination Under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983.** ...........................11

**C.    Ms. Tapp-Harper Fails to State a Claim of Retaliation Under Title VII of the Civil Rights Act of 1964.** ..................................................................................12

**D.    Ms. Tapp Harper Fails to State Claims of Retaliation Under the First Amendment and Article 40 of the Maryland Declaration of Rights.**...................15

**E.    Ms. Tapp Harper Fails To State A Claim Of Breach Of Contract.**.............16

**F.    Ms. Tapp-Harper Is Barred From Brining A Claim Of A Violation Of Maryland Whistleblower Law.**.................................................................................17

**G.    Ms. Tapp Harper Fails to State a Claim of Constructive Discharge.**...........19

**Conclusion** ..................................................................................................................21

## FACTS AND LEGAL PROCEEDINGS

**Factual Background**

In August 2022, plaintiff Sabrina Tapp-Harper, at the time a major with the Baltimore City Sheriff's Office, entered into a settlement agreement with then-Sheriff John Anderson.[1] ECF No. 10, ¶ 9; Ex. 1, Settlement Agreement.[2] The settlement arose out of

---

[1] Sheriff John W. Anderson was the Baltimore City Sheriff from January 1989 to November 30, 2022. *See* Fed. R. Evid. 201; Maryland State Archives, Maryland Manual On-line, Baltimore City, Maryland, Judicial Branch, Sheriffs, https://msa.maryland.gov/msa/mdmanual/36loc/bcity/jud/sheriffs/former/html/msa14118.html (last visited Nov. 11, 2024).

[2] In evaluating a motion to dismiss, a court "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Community Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). "An integral document is a document that by its 'very existence, and *not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Foundation, Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting

Ms. Tapp-Harper's September 2021 complaint alleging gender and race discrimination and a hostile work environment. (ECF No. 10, ¶ 7.) Ms. Tapp-Harper settled and withdrew her discrimination complaint in exchange for a promotion to the position of Assistant Sheriff, effective September 1, 2022. ECF No. 10, ¶ 9; Ex. 1. At the time, the Baltimore City Sheriff was permitted by state law to appoint just one assistant sheriff. *See* Md. Code Ann., Cts. & Jud. Proc. § 2-316(d)(1)(ii) (LexisNexis 2020).[3] The position, like all positions above the rank of lieutenant, was not entitled to collective bargaining. Cts. & Jud. Proc. § 2-316(i).

Ms. Tapp-Harper was promoted as anticipated in the agreement. (ECF No. 10, ¶ 9.) However, the settlement agreement did not include any terms as to the duration of the promotion. Indeed, Sheriff Anderson reserved "the right to rescind the promotion and demote [Ms. Tapp-Harper] back to the rank of Major" if Ms. Tapp-Harper did not comply with the terms of the agreement. Ex. 1, at 2.

The settlement also included a release of all claims to date:

> In exchange for the Sheriff's offer of this promotion to Assistant Sheriff, you agree to hereby and forever release and discharge the State of Maryland, the Baltimore City Sheriff, and any member of the Baltimore City Sheriff's Office from any claim, demand, right, or cause of action, of whatever nature or kind, in law, equity, administrative proceeding, or otherwise, or any entitlement to attorneys' fees, and from any other matter, including, but not limited to all claims, stated or unstated, of discrimination, harassment, and/or retaliation, and any other claim whatsoever you could make, arising from any events during your employment to date with the Baltimore City Sheriff.

---

*Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)) (emphasis in *Chesapeake Bay Foundation*).

[3] Legislation enacted in 2024 and effective October 1, 2024 expanded this to three assistant sheriffs. *See* 2024 Md. Laws Ch. 202 (HB 1034).

Ex. 1, at 1.

On November 8, 2022, Sam Cogen was elected Sheriff of Baltimore City. (ECF No. 10, ¶ 11.) Sheriff Cogen had previously been employed by the Baltimore City Sheriff's Office from 1996 until his retirement from the Assistant Sheriff position in 2021.[4] Sheriff Cogen was sworn in on November 30, 2022. (ECF No. 10, ¶ 12.) Later that day, Ms. Tapp-Harper was placed on administrative leave. (ECF No. 10, ¶ 12.) On December 27, 2022, Ms. Tapp-Harper was terminated from her position with the Baltimore City Sheriff's Office. (ECF No. 10, ¶ 14.)

**Pre-Litigation Activities**

Ms. Tapp-Harper timely filed a complaint with the United States Equal Employment Opportunity Commission, which issued her a right-to-sue notice on May 30, 2024. (ECF No. 10, ¶ 23.)

**Legal Proceedings**

Ms. Tapp-Harper filed an initial complaint on August 28, 2024, which she later amended on October 29, 2024. (ECF Nos. 1, 10.) She alleges nearly a dozen counts:

| Count I | Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964 |
|---|---|
| Count II | Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964 |
| Count III | Retaliation in Violation of Title VII of the Civil Rights Act of 1964 |
| Count IV | Retaliation for Exercising Rights Protected by the First Amendment to the U.S. Constitution |

---

[4] About Sam Cogen, Cogen for Sheriff, https://baltimoresheriff.com/about-sam/ (last visited Nov. 11, 2024).

| Count V | Retaliation for Exercising Rights Protected by Article 40 of the Maryland Declaration of Rights |
|---|---|
| Count VI | Breach of Contract |
| Count VII | Race and Gender Discrimination under 42 U.S.C. § 1983 |
| Count VIII | Race Discrimination in Violation of 42 U.S.C. § 1981 |
| Count IX | Violation of the Maryland Whistleblower Law |
| Count X | Constructive Discharge |

(ECF No. 10.) She seeks, amongst other relief, compensatory damages of at least $500,000; reinstatement with back pay; front pay; punitive damages of at least $1,000,000; attorney's fees and costs; all available damages under 42 U.S.C. § 1981; all available damages under the Maryland Whistleblower law; all appropriate damages for a claim of constructive discharge; and to enjoin Sheriff Cogen from further retaliation against her. (ECF No. 10, at 13-14.)

**LEGAL STANDARD**

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

When ruling on a motion under Fed. R. Civ. P. 12(b)(6), "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S.

89, 94 (2007) (per curiam) (citations omitted). Nevertheless, it is insufficient that the well-pleaded facts create "the mere possibility of misconduct." *Ashcroft*, 556 U.S. at 679. Simply put, "[l]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255 (4th Cir. 2009) (citing *Ashcroft*, 556 U.S. at 677).

Pursuant to Rule 12(d), this Court has the discretion to consider matters outside of the pleadings in conjunction with a Rule 12(b)(6) motion, and if the Court does so, treat the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "Summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law." *Schlapia v. Daley*, 975 F. Supp. 785, 788 (D. Md. 1997). As the Supreme Court has explained, to survive summary judgment the nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

## ARGUMENT

### I.    MS. TAPP-HARPER RELEASED ALL CLAIMS PREDATING AUGUST 18, 2022.

When Ms. Tapp-Harper entered into a settlement agreement in August 2022, she released

> the Baltimore City Sheriff, and any member of the Baltimore City Sheriff's Office from any claim, demand, right, or cause of action . . . including, but not limited to all claims, stated or unstated, of discrimination, harassment, and/or retaliation, and any other claim whatsoever [she] could make, arising from any events during [her] employment to date with the Baltimore City Sheriff.

6

Ex. 1, at 1. Ms. Tapp-Harper is thus precluded from litigating any claims stemming from the beginning of her employment through August 18, 2022, the date the agreement was fully executed.

Settlement agreements are contracts, and, thus, interpretation of such agreements rests on basic contract principles. *See Silicon Image, Inc. v. Genesis Microchip, Inc.*, 271 F. Supp. 2d 840, 847-48 (E.D. Va. 2003) (citing *Byrum v. Bear Inv. Co.*, 936 F.2d 173, 175 (4th Cir. 1991)). A core tenet of basic contract principles is that courts construe terms according to their plain meaning where a document is clear and unambiguous on its face. *See Serna v. Holder*, No. 1:12-cv-712, 2013 WL 12095668, at *6 (E.D. Va. Feb. 27, 2013). Here, the settlement agreement expressly precludes Ms. Tapp-Harper from pursuing "all claims, stated or unstated" against "any member of the Baltimore City Sheriff's Office," "arising from any events during [her] employment to date with the Baltimore City Sheriff." Ex. 1, at 1; *see also Keith v. Aldridge*, 900 F.2d 736, 741 (4th Cir. 1990) (stating "[i]f the parties intended to foreclose through agreement litigation of a claim, assertion of that claim in a later suit, whether or not formally presented in the earlier action, is precluded"). The Court should therefore dismiss all claims that Ms. Tapp-Harper released with her August 2022 settlement agreement.

The Court should dismiss all claims predating August 18, 2022.

**II.   MS. TAPP-HARPER CANNOT INVOKE 42 U.S.C. §§ 1981 OR 1983 AGAINST SHERIFF COGEN, A STATE ACTOR.**

### A. Sheriff Cogen, in His Official Capacity, is Not a "Person" under 42 U.S.C. § 1983.

Ms. Tapp-Harper cannot allege a claim against Sheriff Cogen under 42 U.S.C. § 1983 in his official capacity because he is not a "person" under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). It is well settled that "a State is not a person within the meaning of [42 U.S.C.] § 1983." *Will v. Michigan Dep't of Police*, 491 U.S. 58, 64 (1989). It is similarly well settled that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," or, in other words, the State. *Id*. at 71. Both this Court and Maryland courts "ordinarily" and "consistently" treat sheriffs and their deputies as state officials. *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 375 (D. Md. 2011); *see also Ensor v. Jenkins*, No. ELH-20-1266, 2021 WL 1339760, at *22 (D. Md. March 25, 2021) (collecting cases). Therefore, Ms. Tapp-Harper cannot proceed with her official-capacity § 1983 claim against Sheriff Cogen. The Court should dismiss the official-capacity portion of Count VII.

### B. Sheriff Cogen, as a State Actor, Cannot Be Sued Under 42 U.S.C. § 1981.

Ms. Tapp-Harper likewise cannot allege a claim against Sheriff Cogen under 42 U.S.C. § 1981 because, for any claim against a state actor, "§ 1983 is the 'exclusive federal

remedy for violation of the rights guaranteed in § 1981.'" *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)); *see also Victors v. Kronmiller*, 553 F. Supp. 2d 533, 541-44 (D. Md. 2008) (dismissing § 1981 claim against state individual defendants because "§ 1983 provides the exclusive federal damages remedy for the violation of the rights guaranteed by . . . § 1981"). Sheriff Cogen is a state official, *e.g.*, *Paulone*, 787 F. Supp. 2d at 375, and Ms. Tapp-Harper cannot bring a claim against him under 42 U.S.C. § 1981. The Court should therefore dismiss Count VIII.

## III.    MS. TAPP-HARPER FAILS TO STATE A CLAIM FOR ANY EVENTS AFTER THE AUGUST 18, 2022 SETTLEMENT AGREEMENT.

### A.  Ms. Tapp-Harper Fails to State Claims of Race Discrimination Under Title VII and 42 U.S.C. § 1983.

Ms. Tapp-Harper fails to state claims of race discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983[5] during the period following the execution of her settlement agreement on August 18, 2022, to the time of her termination on November 30, 2022.

To establish a claim of race discrimination under Title VII, a plaintiff must demonstrate: "(1) membership in a protected class; (2) satisfactory job performance; (3) [an] adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Rorie v. Bd. of Educ. of Charles County*, 653 F. Supp. 3d 217,

---

[5] Ms. Tapp-Harper cannot state a § 1983 claim against Sheriff Cogen in his official capacity, as argued in section II.B. However, she has also alleged a § 1983 claim against Sheriff Cogen in his individual capacity.

230 (D. Md. 2023) (quoting *Good v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015), *abrogated in part on other grounds by Bing v. Brivo Sys., LLC*, 959 F.3d 605, 611-12 (4th Cir. 2020)).[6] Title VII discrimination claims must "allege facts to satisfy the elements of a cause of action created by that statute," not simply conclusory statements. *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Importantly, the standards for race discrimination claims under Title VII also apply to 42 U.S.C. § 1983 race discrimination claims. *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) (noting that "the *McDonnell Douglas* framework, developed for Title VII, has been used to evaluate race discrimination claims under [42 U.S.C. § 1983]").

Ms. Tapp-Harper's claims lack the necessary factual support for a prima facie case of race discrimination under Title VII and 42 U.S.C. § 1983 (individual capacity claim). Specifically, Ms. Tapp-Harper fails to meet element four of a prima facie case of race discrimination. Ms. Tapp-Harper alleges that she was replaced "by a less qualified male," without identifying her replacement's race. (ECF No. 10, ¶¶ 18, 29.a, 64.a, 70.d) Because Ms. Tapp-Harper fails to establish a prima facie case of race discrimination, the Court's analysis stops at step one. *See King*, 328 F.3d at 150 (stating that "since King never established a prima facie case as to his discrimination claims, appellee is under no duty to supply

---

[6] "A claim of race discrimination in employment may be established through one of two methods. The plaintiff may either demonstrate through direct or circumstantial evidence that discrimination motivated the adverse employment action, or the plaintiff may proceed through the approach espoused in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), under which the plaintiff must establish a prima facie case of discrimination[.]" *Rorie*, 653 F. Supp. 3d at 230. Because Ms. Tapp-Harper does not allege direct discrimination, she appears to be proceeding through the *McDonnell Douglas* burden-shifting approach.

an explanation for King's discharge); *see also Settle v. Balt. Cnty.*, 34 F. Supp. 2d 929, 995 (D. Md. 1999) ("Plaintiff's . . . failure to establish a prima facie case under Title VII . . . is fatal to his claims under § . . . 1983" (quoting *Causey v. Balog*, 929 F. Supp. 900, 913 (D. Md. 1996)).

Therefore, Ms. Tapp-Harper fails to state claims of race discrimination, and the Court should dismiss Counts II and Count VII.

### B.  Ms. Tapp-Harper Fails to State Claims of Gender Discrimination Under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983.

Ms. Tapp-Harper fails to state claims of gender discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983 during the period following the execution of her settlement agreement on August 18, 2022, to the time of her termination on November 30, 2022.

Like claims of race discrimination under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983, claims of gender discrimination require a plaintiff to show: "(1) membership in a protected class; (2) satisfactory job performance; (3) [an] adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Rorie*, 653 F. Supp. 3d at 230 (quoting *Good v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015), *abrogated in part on other grounds by Bing v. Brivo Sys., LLC*, 959 F.3d 605, 611-12 (4th Cir. 2020)); *see also Ezell v. Darr*, 951 F. Supp. 2d 1316, 1330 (M.D. Ga. 2013), *aff'd sub nom. Ezell v. Wynn*, 802 F.3d 1217 (11th Cir. 2015) (stating that the framework to establish a claim for gender discrimination under Title VII and § 1983 is the same).

Ms. Tapp-Harper fails to meet the second element of a prima facie case of gender discrimination under Title VII and 42 U.S.C. § 1983. Ms. Tapp-Harper contends that "[t]hroughout her tenure, [she] provided the Baltimore City Sheriff's Office with numerous ground-breaking, historical opportunities[.]" (ECF No. 10, ¶ 19.) Ms. Tapp-Harper fails to plead any facts that show that her employer would have regarded her as meeting its legitimate expectations or meeting the standard of satisfactory job performance. *See King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003); *see also Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996) (stating "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff" and "plaintiff's own opinions and conclusory allegations do not have sufficient probative force to reflect a genuine issue of material fact" (citations omitted)). The mere fact that Ms. Tapp-Harper believes that she "provided the Baltimore City Sheriff's Office with numerous ground-breaking, historical opportunities" fails to satisfy element two of a prima facie case of gender discrimination, as the analysis is based upon the employer's observation, not her own.

The Court should therefore dismiss Count I and Count VII.

### C. Ms. Tapp-Harper Fails to State a Claim of Retaliation Under Title VII of the Civil Rights Act of 1964.

In Count III, Ms. Tapp-Harper alleged that Sheriff Cogen retaliated against her in violation of Title VII of the Civil Rights Act of 1964. Ms. Tapp-Harper's "claim[] [is] subject to the *McDonnell Douglas* burden shifting framework." *Giscombe v. New York City Dep't of Educ.*, 39 F. Supp. 3d 396, 400 (S.D.N.Y. 2014). The elements of a prima facie retaliation claim are: "(1) [plaintiff] engaged in a protected activity by opposing a practice

made unlawful by Title VII; (2) [plaintiff's] employer was aware of that activity; (3) [plaintiff] suffered a materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Giscombe*, 39 F. Supp. 3d at. 401. "Ultimately, a plaintiff bringing a Title VII retaliation claim must be able to show that [their] participation in protected activity was the but-for cause of any alleged adverse employment action that he suffered." *Cooper v. Pennsylvania Hum. Rels. Comm'n*, 578 F. Supp. 3d 649, 667 (M.D. Pa. 2022).

Sheriff Cogen assumes that Ms. Tapp-Harper participated in a protected activity when she filed her internal complaint of discrimination in September 2021. "Protected activity under Title VII includes complaints of discrimination based upon 'race, color, religion, sex or national origin.'" *Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013); *see also* 42 U.S.C. § 2000e-3(a) (defining "protected activity" making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII). And the termination was a materially adverse employment action.

But Ms. Tapp-Harper fails to meet the second and fourth elements. First, although she briefly alleges that "Defendant was aware of Plaintiff's protected activity," (ECF No. 10, ¶ 40), she provides no other detail to support this claim. Indeed, she has not even alleged that Sheriff Cogen was employed by the Baltimore City Sheriff's Office at the time of her internal complaint in September 2021, let alone provided any allegations that suggest that he knew of the complaint (despite his retirement in 2021) or that he knew of the August 2022 settlement, when he was not employed by the Sheriff's Office.

13

Second, Ms. Tapp-Harper filed the internal complaint of discrimination in September 2021, nearly fifteen months before her termination in November 2022. The time between the filing of Ms. Tapp-Harper's EEO complaint and her termination fails to establish that a causal link existed between the protected activity and the adverse employment action. The United States Court of Appeals for the Fourth Circuit has required a much shorter time period for a plaintiff to proceed with a retaliation claim:

> Although there is no bright-line rule for temporal proximity, courts within our Circuit have found that shorter lapses of time similar to the three-month period at issue in the case before us are insufficient to infer a causal relationship without other evidence of a causal link. For example, this Court has held that a lapse of three to four months between the employer's knowledge of protected activity and the alleged retaliation is too long to establish a causal connection by temporary proximity alone. This Court has also found that, absent other evidence of a causal relationship, a lapse of two months between the protected activity and the adverse action is sufficiently long so as to weaken significantly the inference of causation.

*Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) (internal quotations and citations omitted). Ms. Tapp-Harper has alleged nothing more than "[t]here [was] a causal connection between Plaintiff's protected activity and the adverse employment actions, as evidenced by the temporal proximity between the settlement of her EEO complaint and her subsequent termination." (ECF No. 10, ¶ 49.) Absent additional evidence as required by the Fourth Circuit, Ms. Tapp-Harper has not established a causal link between the filing of her EEO complaint and her termination, failing to meet the fourth element of a prima facie case of retaliation.

The Court should therefore dismiss Count III.

**D. Ms. Tapp Harper Fails to State Claims of Retaliation Under the First Amendment and Article 40 of the Maryland Declaration of Rights.**

Ms. Tapp-Harper fails to state claims of retaliation under the First Amendment and Article 40 of the Maryland Declaration of Rights. "The First Amendment provides that, 'Congress shall make no law . . . abridging the freedom of speech,' and Article 40 provides that 'every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects.' Article 40 is 'co-extensive' with the First Amendment, and is construed in pari materia with it." *Borzilleri v. Mosby*, 189 F. Supp. 3d 551, 556-57 (D. Md. 2016), *aff'd*, 874 F.3d 187 (4th Cir. 2017) (quoting *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 468 n.3 (4th Cir. 2012)). Courts evaluate First Amendment claims in a three-step process. *See Borzilleri*, 189 F. Supp. 3d at 562. First, a court asks whether the plaintiff employee spoke as a citizen on a matter of "public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). Second, upon a finding of "public concern," the court must balance "the interests of the [plaintiff], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Third, "if the employee's claim satisfies both of these legal criteria, the court turns to the factual question of whether the employee's speech was a substantial factor in the employee's termination decision." *Durham v. Jones*, 737 F.3d 291, 299 (4th Cir. 2013).

The Court should dismiss Counts IV and V because Ms. Tapp-Harper was not engaged in speech that would constitute as a "public concern" at the time of her suspension

and termination. "Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Kirby v. City of Elizabeth City*, 388 F.3d 440, 446 (4th Cir. 2004). "Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee." *Stroman v. Colleton County Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992).

Ms. Tapp-Harper contends she was engaged in protected speech of public concern regarding her claims of raising concerns about the "disparate application of a department policy on the reimbursement of training costs with members of the command staff, including Defendant Cogen." (ECF No. 10, ¶ 45). But this complaint does not rise to the level of a claim that can be considered a "public concern." This is an internal departmental procedural issue that does not affect the societal, political, or any other aspect of the community at large. Only a small number of Baltimore City Sheriff's Office employees would be affected and solely in a monetary fashion. This concern is not applicable to the greater Baltimore City community.

The Court should therefore dismiss Counts IV and V.

### E.  Ms. Tapp Harper Fails To State A Claim Of Breach Of Contract.

Ms. Tapp-Harper fails to state a claim of breach of contract. To establish a breach of contract claim, a party must prove the following four elements:(1) that a valid, enforceable contract exists; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that

16

the plaintiff has been injured as a result of a breach. *See Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 714 (S.D.W. Va. 2009). In Maryland, in the absence of a contract for employment of a definite term, an employee is considered an at-will employee. *Gwinn v. Food Lion, LLC*. 195 F. Supp. 2d 728, 730 (D. Md. 2002). "[A]t-will employment is a contract of indefinite duration that can be terminated at the pleasure of either party at any time." *Hrehorovich v. Harbor Hospital Center, Inc.*, 93 Md. App. 772, 790 (1992). "As the designation implies, an employer may ordinarily terminate an at-will employee at any time, for almost any reason or for no reason." *Samuels v. Tschechtelin*, 135 Md. App. 483, 525 (2000).

Despite Ms. Tapp-Harper's claims that Sheriff Cogen breached a contract by "[t]erminating [her] employment without cause and by [f]ailing to honor the terms of the settlement agreement regarding [her] continued employment," (ECF No. 10, ¶ 58), the settlement agreement did not specify a definite duration for her employment as Assistant Sheriff, nor did it restrict the sheriff's ability to terminate her employment. *See* Ex. 1, at 1. As an at-will employee, Sheriff Cogen was free to terminate Ms. Tapp-Harper "at any time for almost any reason or for no reason." *Samuels*, 135 Md. App. at 525. The Court should therefore dismiss Count VI.

###    F. Ms. Tapp-Harper Is Barred From Bringing A Claim Of A Violation Of Maryland Whistleblower Law.

Ms. Tapp-Harper also fails to state a claim in violation of Maryland Whistleblower Law because she is not a covered employee. Located in the State Personnel and Pensions Article, the Maryland Whistleblower Law applies to "all employees and State employees

who are applicants for positions in the Executive Branch of State government, including a unit with an independent personnel system . . . ." State Personnel & Pensions. § 5-301(a)(1). State Gov't § 8-201(b) lists all principal departments of the executive branch of state government. The Maryland sheriffs are not included. The Maryland Constitution further supports this distinction by placing the Maryland sheriffs under the judiciary department, a department that is also not a part of the executive branch of state government. Md. Const. art. IV, § 44. *Cf. Thornton Mellon, LLC v. Frederick Cnty. Sheriff*, 252 Md. App. 320, 332 (2021), *aff'd*, 479 Md. 474 (2022) (stating that while a sheriff's duties are a mixture of judicial, executive, and legislative, "sheriffs are [] specifically prohibited from promulgating regulations pursuant to the State administrative procedures act because they are not part of the executive branch."); *Donlon v. Montgomery County Public Schools*, 460 Md. 62, 96 (2018) (concluding that although county boards of education are state entities in some respects, they do not fall under the Maryland Whistleblower Law). Consequently, Ms. Tapp-Harper is not a covered employee under the Maryland Whistleblower Law and is barred from bringing the claim.

But even assuming that the Sheriff's Office is a covered entity, Ms. Tapp-Harper's complaint is late. A complaint asserting a claim alleging violation of the Executive Employees Whistleblower Protection Act must be filed with the Secretary of Budget and Management within six months of the date the complainant knew or should have known of the violation. State Personnel & Pensions § 5-309. Despite Ms. Tapp-Harper being terminated on December 27, 2022, (ECF No. 10, ¶ 14) Ms. Tapp-Harper never alleges that she filed a complaint with the Secretary of Budget and Management asserting a violation of the

18

Executive Employees Whistleblower Protection Act, much less within six months of the alleged violation. Consequently, any such claim would be barred, and the Court should dismiss Count IX.

### G. Ms. Tapp Harper Fails to State a Claim of Constructive Discharge.

Ms. Tapp-Harper fails to state a claim of constructive discharge, under both Maryland and federal law. State law constructive discharge occurs "when an employer deliberately causes or allows the employee's working conditions to become so intolerable that the employee is forced into an involuntary resignation." *Beye v. Bureau of Nat. Affs.*, 59 Md. App. 642, 651 (1984) (internal quotation omitted.). To successfully claim constructive discharge under Title VII, "[a]n employee must show that his or her employer deliberately made working conditions so intolerable that any reasonable person would have resigned." *Diamond v. T. Rowe Price Assocs., Inc.*, 852 F. Supp. 372, 378 (D. Md. 1994). "The Fourth Circuit has cautioned that constructive discharge claims must be 'carefully cabined' by district court judges because 'the claim of constructive discharge is so open to abuse by those who leave employment of their own accord.'" *Diamond*, 852 F. Supp. at 397 (quoting *Paroline v. Unisys Corp.*, 879 F.2d 100, 114 (4th Cir. 1989), *opinion vacated in part on reh'g*, 900 F.2d 27 (4th Cir. 1990)). Here, Ms. Tapp-Harper has made no showing of constructive discharge, under either state or federal law for two reasons.

First, Ms. Tapp-Harper did not resign: she was terminated. (ECF No. 10, ¶ 14.) By contrast, under state law "a constructive discharge occurs . . . when an employer deliberately causes or allows the employee's working conditions to become so intolerable that the

19

employee is forced into *an involuntary resignation.*" *Beye*, 59 Md. App. at 651 (internal

quotation omitted) (emphasis added).

Second, Ms. Tapp-Harper has not alleged facts indicating the intolerable working

conditions recognized by courts in this circuit and others. Courts have outlined what con-

stitutes "intolerable working conditions" in various instances. For example:

> (1) Employer falsely accused plaintiff of stealing from company, told her that she would be replaced by a male, and asserted that she did not "fit the mold" because she was a woman. *Levendos v. Stern Entertainment, Inc.*, 860 F.2d 1227, 1228 (3d Cir. 1988);
>
> (2) Company knew plaintiff was being racially harassed but did nothing. *Holsey v. Armour & Co.*, 743 F.2d 199, 209 (4th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985).
>
> (3) Employer incessantly asked plaintiff when he would resign, demanded that he train his young successor, required him to explain his demotion to the company's biggest client, and asked him to introduce the young successor to that client. *Stephens v. C.I.T. Group/Equipment Fin. Co.*, 955 F.2d 1023 (5th Cir. 1992);
>
> (4) Supervisor referred to women as "broads," purposely created a false record to denigrate the plaintiff, and eliminated all of her job duties. *Scott v. Oce Indus., Inc.*, 536 F. Supp. 141, 149 n.2 (N.D. Ill. 1982);
>
> (5) Supervisor verbally abused plaintiff in front of other employees, told her she had no future with the company, and ordered her to do illegal things. *Thomas v. Cooper Indus., Inc.*, 627 F. Supp. 655 (W.D.N.C. 1986).

*Diamond*, 852 F. Supp. at 398. These cases demonstrate the severity of conditions neces-

sary for a Title VII constructive discharge claim. This Court has consistently held that "[t]he

incidents alleged must [] have rendered the job objectively intolerable to a reasonable per-

son." *Id.* at 399. Minor grievances, such as "mere dissatisfaction with work assignments, a

feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so

20

intolerable as to compel a reasonable person to resign." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (quoting *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 378 (4th Cir.2004) (internal quotation marks omitted)).

In contrast, Ms. Tapp-Harper's claim that "Defendant Cogen's actions in immediately suspending [her] police powers and placing her on administrative leave without cause created intolerable working conditions" falls short of these established standards. (ECF No. 10, ¶ 80.) Ms. Tapp-Harper's dissatisfaction with Sheriff Cogen's decision to place her on administrative leave would not compel a reasonable person to resign. Therefore, Count X should be dismissed.

## CONCLUSION

The Court should dismiss the complaint.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Alexis I. Gbemudu
Alexis I. Gbemudu (No. 22021)
Assistant Attorneys General
80 Calvert Street
Annapolis, Maryland 21401
agbemudu@treasurer.state.md.us
(410) 260-6139

Counsel for Sheriff Samuel Cogen