## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SABRINA TAPP-HARPER,

     *Plaintiff*,

  v.

SHERIFF SAMUEL COGEN,

     *Defendant*

Case No. 24-cv-2498-ABA

### MEMORANDUM OPINION

Plaintiff Sabrina Tapp-Harper ("Plaintiff" or "Ms. Tapp-Harper") sued Defendant Sheriff Sam Cogen ("Defendant" or "the Sheriff") for alleged wrongful termination from the Baltimore City Sheriff's Office based on gender discrimination, race discrimination, retaliation, and several related claims. Defendant has filed a motion to dismiss, or in the alternative, for summary judgment, arguing that Ms. Tapp-Harper released many of her claims in a settlement agreement and has failed to state a claim for any events that fall outside the scope of that release. For the reasons outlined below, the Court will dismiss all of Plaintiff's claims except her claim for retaliation.

## I.    BACKGROUND[1]

### A.    Facts

Plaintiff was hired as a Deputy Sheriff Major with the Baltimore City Sheriff's Office ("the Sheriff's Office") in January 2014. ECF No. 10 ¶ 5. Plaintiff alleges that during her tenure, she had several notable accomplishments, including creating a

---

[1] In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all of the factual allegations contained in the complaint[.]" *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

nationally recognized Domestic Violence Unit and establishing the Sheriff's Office in-service training program. *Id.* ¶ 19.

Ms. Tapp-Harper filed an internal EEO complaint on September 7, 2021 "detail[ing] specific incidents of gender and race discrimination." *Id.* ¶¶ 7, 8. For example, she alleged that a department policy about the reimbursement of training costs was being applied unfairly based on race and gender, "with male employees receiving preferential treatment." *Id.* ¶ 8. She later amended her EEO complaint to include allegations that then-Assistant Sheriff Cogen was unequally enforcing the training reimbursement policies. *Id.* ¶ 7, 22. On August 18, 2022, Ms. Tapp-Harper entered a settlement agreement to resolve her EEO complaint, wherein she was promoted to Assistant Sheriff and agreed to withdraw her EEO claims and release the Sheriff's Office from any liability associated with those claims. *Id.* ¶ 9; *see also* ECF No. 11-3 at 2.

In November 2022, Defendant was elected to the position of Baltimore City Sheriff. ECF No. 10 ¶ 11. He was sworn in as Sheriff on November 30, 2022; later that day, Ms. Tapp-Harper was placed on administrative leave without prior notice. *Id.* ¶ 12. The following day, she submitted paperwork to the state pension system indicating her plan to retire effective February 1, 2023. *Id.* ¶ 13. On December 27, 2022, Sheriff Cogen issued Ms. Tapp-Harper a termination letter, terminating her employment immediately. *Id.* ¶ 14. She contends that her placement on administrative leave and termination were in retaliation for naming Sheriff Cogen in her earlier EEO complaint, and that her termination violated the settlement agreement. *Id.* ¶ 17, 22, 41. Ms. Tapp-Harper says that she was replaced by a less-qualified "male assistant sheriff." *Id.* ¶ 18.

### B.    Procedural History

On May 30, 2024, the EEOC issued Plaintiff a notice of right to sue, allowing her to bring this lawsuit. *Id.* ¶ 23. Plaintiff filed this complaint in August 2024. ECF No. 1. She asserted seven claims, including race and gender discrimination under Title VII; retaliation under Title VII, the First Amendment of the U.S. Constitution, and Article 40 of the Maryland Declaration of Rights; breach of contract; and employment discrimination under 42 U.S.C. § 1983. *Id.* at 4–9. Defendant filed a motion to dismiss, arguing that Plaintiff had failed to state a claim upon which relief can be granted. ECF No. 9. Shortly thereafter, Plaintiff filed an amended complaint, ECF No. 10, adding numerous factual allegations and three new counts (constructive discharge, race discrimination under § 1981, and a violation of the Maryland Whistleblower Law). *See* ECF No. 10 at 11–13.[2] Defendant then filed a motion to dismiss the amended complaint, or in the alternative, for summary judgment. ECF No. 11. Plaintiff filed an opposition brief, ECF No. 12, and Defendant filed a reply brief, ECF No. 15.

## II.    DISCUSSION

### A.    Standard of review

Defendant filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." ECF No. 11. Although Plaintiff has not filed a notice with specific reasons why she "cannot present facts essential to justify [her] opposition" at this stage, *see* Fed. R. Civ. P. 56(d), she has requested that the Court allow the case to proceed to discovery.

---

[2] Because the amended complaint takes the place of the original complaint, the Court will deny as moot Defendant's motion to dismiss the original complaint. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("an amended pleading ordinarily supersedes the original and renders it of no legal effect") (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160, 162 (2d Cir. 2000)).

ECF No. 12 at 8. The Court agrees that it is premature to consider the case under a summary judgment standard and, therefore, will interpret Defendant's motion as a motion to dismiss only.

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Mere "labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement" are insufficient to meet the Rule 8 pleading standard. *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6).

A court may consider a document submitted by the movant that was not expressly incorporated into the complaint without converting the motion into one for summary judgment in the limited circumstances where (1) there is no dispute about the document's authenticity and (2) the document was integral to the complaint. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Here, Defendant attached to his motion to dismiss a copy of the August 2022 settlement agreement between the Sheriff's Office and Ms. Tapp-Harper. ECF No. 11-3. Plaintiff does not dispute the authenticity of the settlement agreement. *See* ECF No. 12 at 3. And she expressly relies on it in her complaint. ECF No. 10 ¶ 9 ("On September 1, 2022, Plaintiff was promoted to Assistant Sheriff as part of a settlement agreement to resolve her EEO complaint. The agreement, signed by the Baltimore City Sheriff and Plaintiff, required her to withdraw her EEO claims, including the disparate application claims against then-Assistant Sheriff Samuel Cogen."); *id.* ¶ 51 (alleging that Sheriff Cogen violated the settlement

agreement). Accordingly, the Court may consider, and does consider, the settlement agreement without converting the motion to one for summary judgment.

### B.    Pre-August 2022 claims

Ms. Tapp-Harper alleges that she was "subjected to persistent gender and race discrimination" "[t]hroughout her tenure" at the Baltimore City Sheriff's Office, which lasted from January 2014 through December 2022. ECF No. 10 ¶¶ 1, 6. Defendant asserts that Plaintiff has released all claims that preceded the signing of the August 2022 settlement agreement. ECF No. 11-1 at 6–7. Plaintiff argues the settlement agreement does not bar her current claims for three reasons: (1) because her claims "arise primarily from Defendant Cogen's conduct after he took office in November 2022," ECF No. 12 at 3; (2) the agreement is unenforceable as a matter of public policy, *id*. at 4, and (3) Defendant breached the settlement agreement and a party "cannot enforce a release provision in an EEO settlement agreement if that party has materially breached the agreement," *id*. at 3–4.

In her August 2022 settlement agreement, Ms. Tapp-Harper agreed to "hereby and forever release and discharge the State of Maryland, the Baltimore City Sheriff, and any member of the Baltimore City Sheriff's Office from any claim, demand, right, or cause of action, of whatever nature or kind, in law, equity, administrative proceeding, or otherwise, or any entitlement to attorneys' fees, and from any other matter, . . . arising from any events during [her] employment to date with the Baltimore City Sheriff." ECF No. 11-3 at 1. The agreement goes on to reiterate that the release does not apply to "any claim that arises . . . after the date this Agreement is fully executed." *See* ECF No. 11-3 at 1. So to the extent Ms. Tapp-Harper's claims "arise . . . from Defendant Cogen's conduct after he took office in November 2022," ECF No. 12 at 3, the settlement agreement does

5

not preclude those claims. Defendant does not dispute this point. *See, e.g.*, ECF No. 15 at 2–3 ("Sheriff Cogen has not argued . . . that the settlement agreement 'released future claims or waived [her] right to sue for subsequent discriminatory or retaliatory acts.'") (cleaned up) (quoting Plaintiff's Opposition, ECF No. 12 at 3).

But as to claims "arising from any events during [her] employment" between when she was hired in January 2014 and the date the settlement agreement was executed on August 18, 2022, her claims are precluded by the plain language of the release.[3] Ms. Tapp-Harper contends that the Fourth Circuit "has held that prospective waivers of Title VII claims are void as against public policy." ECF No. 12 at 4 (citing *Carson v. Giant Food, Inc.*, 175 F.3d 325, 330 (4th Cir. 1999)).[4] But Sheriff Cogan's argument is not that the release operated as a prospective waiver of Title VII claims, but rather that insofar as Plaintiff is asserting claims based on pre-release conduct, those claims (or parts of her claims) are barred by the release. Finally, Plaintiff argues that a material breach of the agreement precludes its enforcement. ECF No. 12 at 3-4. But even if that were true, the Court has determined that she has not sufficiently alleged a breach of contract, much less a material breach. *See infra* section II.C.ii. For these reasons, to the extent Plaintiff's claims arise from pre-August 2022 "events during [her]

---

[3] A settlement agreement releasing certain claims can bar those claims at the motion to dismiss stage. *See, e.g.*, *Wittstadt v. Hosch*, Case No. 16-cv-2251-CCB, 2016 WL 7157417, at *2 (D. Md. Dec. 8, 2016) (granting motion to dismiss where plaintiffs released relevant claims in a settlement agreement); *Jacobs v. Venali, Inc.*, 596 F. Supp. 2d 906, 909, 914 (D. Md. 2009) (granting motion to dismiss where plaintiffs had released in a settlement agreement resolving an earlier case "any and all claims asserted or that could have been asserted" against defendants).

[44] *Carson* specifically addresses the applicable standard for a union-negotiated contract that agrees to arbitrate federal discrimination claims, which differs factually from the circumstances here. 175 F.3d at 331-32.

employment," ECF No. 11-3 at 1, those claims do not state claims on which relief can be granted.

### C.    Post-settlement agreement events

But Plaintiff does not rely solely on pre-August 2022 adverse employment actions in support of her claims. She also challenges the Sheriff's decision to place her on administrative leave on November 30, 2022, and to terminate her employment on December 27, 2022. ECF No. 10 ¶¶ 12, 14. As to those employment actions, the Sheriff does not rely on the release, but rather argues that Plaintiff has not alleged sufficient facts to state a claim on which relief can be granted. For the reasons stated below, the Court will dismiss all but one of Plaintiff's claims under Rule 12(b)(6).

#### i.    Plaintiff has not stated claims for gender or race discrimination, First Amendment retaliation, constructive discharge, breach of contract, or a violation of whistleblower laws

As to the gender discrimination claims under Title VII and under 42 U.S.C. § 1983 based on Equal Protection (counts 1 and 7), Defendant argues that Ms. Tapp-Harper has not alleged satisfactory job performance, which Defendant argues is a required element of a gender discrimination claim. ECF No. 11-1 at 11-12.[5] In her complaint, Ms. Tapp-Harper alleged she "was qualified for her position and was performing her job duties satisfactorily," and cites specific examples of her work accomplishments. ECF No. 10 ¶¶ 19, 27. But regardless, a Title VII plaintiff is not required to establish a *prima facie* case of discrimination under the *McDonnell Douglas*

---

[5] Defendant also contends that Plaintiff cannot bring either of her § 1983 claims because Sheriff Cogen is not a "person" under the statute. *See* ECF No. 11-1 at 8. Because the Court resolves these claims on a different basis, it will not address the merits of this argument.

framework to survive a motion to dismiss. *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584-85 (4th Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002) ("prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement"). So any failure to allege satisfactory job performance is not a bar at this stage.

To state a claim for gender discrimination under Title VII, a plaintiff must plausibly plead that an employer "took an adverse action against her because of her sex." *Franovich v. Hanson*, 687 F. Supp. 3d 670, 682 (D. Md. 2023) (citing 42 U.S.C. § 2000e-2(a)). Her 14th Amendment equal protection claim based on gender discrimination requires her to allege, among other elements, that she was denied "'equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

In light of Plaintiff's release of claims arising from her pre-August 2022 employment, the pertinent question is whether Plaintiff has alleged facts that would state claims based post-release employment actions. In other words, Plaintiff's release precludes her from relying on vague allegations that she was the victim of discrimination "throughout her employment"; she must allege facts sufficient to state a claim based on post-release employment actions. *See* section II.B *supra*.

As to Ms. Tapp-Harper's Title VII and equal protection claims based on alleged gender discrimination, her allegations are limited to those that (a) she was replaced by a less-qualified male and (b) she was terminated shortly after Sheriff Cogen assumed office. ECF No. 10 ¶ 29. Neither these allegations sufficiently support a claim that her

termination was "because of" her sex. *See* 42 U.S.C. § 2000e-2(a). The Fourth Circuit has considered the identity of a terminated employee's replacement relevant in a discrimination claim. *See Brown v. McLean*, 159 F.3d 898, 905-06 (4th Cir. 1998) (considering, on review of a grant of summary judgment, whether that plaintiff's "position ultimately was filled by someone not a member of the protected class"). But Ms. Tapp-Harper's assertion that she was replaced by a less-qualified man is insufficient to plausibly allege that her termination was "because of" sex. The Court will therefore grant the motion to dismiss for counts 1 and 7.

As to the race discrimination claims under Title VII and the Equal Protection Clause (counts 2 and 7), Defendant argues that Ms. Tapp-Harper has not alleged "different treatment from similarly situated employees outside the protected class," and therefore has not stated a claim for race discrimination on which relief can be granted. ECF No. 11-1 at 9-10 (quoting *Rorie v. Bd. of Educ. of Charles Cnty.*, 653 F. Supp. 3d 217, 230 (D. Md. 2023)). Defendant notes that Ms. Tapp-Harper has not alleged the race of her replacement. *Id.* at 10. But unlike her gender discrimination claim, Ms. Tapp-Harper does not rely on the identity of her replacement to support her race discrimination claim. Instead, she alleges that the "circumstances surrounding Plaintiff's termination give rise to an inference of race discrimination" because of "a. The pattern of discriminatory treatment throughout her employment; b. The disparate application of department policies along racial lines; and c. The timing of her termination shortly after Defendant Cogen assumed office." ECF No. 10 ¶ 36. As above, Plaintiff cannot rely on alleged adverse employment actions that pre-date the settlement agreement. That leaves only the allegation that she was terminated shortly after Sheriff Cogen took office. *Id.* But that allegation is insufficient to plausibly allege that she was

terminated "because of" her race. The Court will therefore grant the motion to dismiss for count 2 and 7.

As to the claim of race discrimination under 42 U.S.C. § 1981 (count 8), a plaintiff may bring a § 1981 claim based on the same facts as a Title VII race discrimination claim. *See Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 441 (4th Cir. 2000) (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 460 (1975)). But just as a plaintiff bringing a Title VII claim must plausibly allege that an adverse employment action was taken "because of" race, "to state a § 1981 race-discrimination claim, a plaintiff must allege facts making it plausible 'that, but for race, [she] would not have suffered the loss of a legally protected right' under the statute." *Ali v. BC Architects Eng'rs PLC*, 832 F. App'x 167, 171 (4th Cir. 2020) (quoting *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020)). Because Ms. Tapp-Harper has not pled sufficient facts to show that she was placed on administrative leave and terminated "because of" her race, she has also failed to state a claim under § 1981 and the Court must dismiss this count.

Ms. Tapp-Harper also brings retaliation claims under the First Amendment and Article 40 of the Maryland Declaration of Rights (counts 4 and 5). She contends that Sheriff Cogen retaliated against her for protected speech. ECF No. 10 ¶¶ 48, 49.

The first step of a First Amendment retaliation analysis is to "determine whether the speech at issue may be 'fairly characterized as constituting speech on a matter of public concern.'" *Campbell v. Galloway*, 483 F.3d 258, 266 (4th Cir. 2007) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)); *see also Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) ("the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern"). "Personal

grievances [and] complaints about conditions of employment . . . do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee." *Stroman v. Colleton Cnty. Sch. Dist.,* 981 F.2d 152, 156 (4th Cir. 1992). "In deciding whether certain speech falls on the 'public concern' or 'purely personal' side of the line, we naturally look to the 'content, context, and form of the speech at issue in light of the entire record.'" *Carey v. Throwe*, 957 F.3d 468, 475 (4th Cir. 2020) (quoting *Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2020)).

Ms. Tapp-Harper contends that the concerns she raised about disparate application of a department policy was protected speech that "addressed a matter of public concern, specifically the fair and equitable treatment of employees in a public office." ECF No. 10 ¶¶ 45, 46. Sheriff Cogen argues that Plaintiff has not stated a claim because her statements were not "protected speech of public concern." *See* ECF No. 11-1 at 16. In considering the "context[] and form of the speech at issue," the Court notes that Plaintiff has not alleged that she made any statements to anyone outside the Sheriff's Office (or, importantly, that the alleged *retaliation* was based on statements outside the office). *Carey*, 957 F.3d at 475; *see also* ECF No. 10 ¶ 45 (alleging that Plaintiff raised concerns about the application of department policy "with members of the command staff, including Defendant"). Given that Ms. Tapp-Harper's statements were "complaints about conditions of [her] employment," *Stroman*, 981 F.2d at 156, and these statements were only ever raised to fellow members of the Sheriff's Office, she has not alleged sufficient facts to show that the statements upon which her retaliation claims rest were speech made "as a citizen addressing matters of public concern." *Garcetti*, 547 U.S. at 417. This is unlike cases such as *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 983–85

(7th Cir. 2013), where a police officer plaintiff's alleged retaliation was based on concerns about corruption that he had raised with an attorney, other officers, and the FBI. Ms. Tapp-Harper does not allege the retaliation was based on statements made to anyone beyond "members of the command staff," ECF No. 10 ¶ 45, which suggests she herself was treating the issue as a personnel matter rather than a matter of public concern. For these reasons, Ms. Tapp-Harper has failed to state a claim for retaliation under either the First Amendment or Article 40 and these counts will be dismissed. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 468 n.3 (4th Cir. 2012) ("Article 40 is 'co-extensive' with the First Amendment, and is construed *in pari materia* with it.") (citation omitted).

As to the breach of contract claim (count 6), Ms. Tapp-Harper alleges that her termination without cause was an intentional and deliberate breach of the settlement agreement. ECF No. 10 ¶ 58. Defendant argues that because the settlement agreement did not "specify a definite duration for [Ms. Tapp-Harper's] employment as Assistant Sheriff, nor did it restrict the sheriff's ability to terminate her employment," Ms. Tapp-Harper's subsequent termination was not a breach of the contract. ECF No. 11-1 at 17.

To allege a breach of contract under Maryland law, a plaintiff must "allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant." *Polek v. J.P. Morgan Chase Bank*, 424 Md. 333, 362 (2012) (emphasis omitted) (quoting *Cont'l Masonry Co. v. Verdel Constr. Co., Inc.*, 279 Md. 479, 480 (1977)). Here, Plaintiff makes only conclusory statements that (a) terminating her without cause is a breach of the settlement agreement and (b) the Sheriff's Office "fail[ed] to honor" the settlement agreement's terms "regarding [her] continued employment." ECF No. 10 ¶ 58. The

settlement agreement neither obligated the Sheriff's Office to provide Ms. Tapp-Harper with "continued employment" for any particular period, nor required that she could only be terminated for cause. *See* ECF No. 11-3 (settlement agreement). Count 6 therefore fails to allege "with certainty and definiteness" that Plaintiff's termination was a breach of any contractual obligation within the settlement agreement, and thus fails to state a breach of contract claim on which relief can be granted.

As to the Maryland Whistleblower Law claim (count 9), Ms. Tapp-Harper alleges that her suspension and termination were retaliation for her protected whistleblowing activities. ECF No. 10 ¶¶ 76, 77. Defendant contends that Plaintiff is not a covered employee under § 5-301(a)(1) of the State Personnel and Pensions Article of the Maryland Code. ECF No. 11-1 at 17-18. Defendant also notes that the opposition brief does not address this argument at all. ECF No. 15 at 9. But the Court will consider the sufficiency of the complaint notwithstanding Ms. Tapp-Harper's failure to oppose the motion to dismiss as to this count. *See Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 n.3 (4th Cir. 2014) ("Even though Appellants did not challenge the motions to dismiss, we note that the district court nevertheless has an obligation to review the motions to ensure that dismissal is proper."). Here, Plaintiff does not identify the specific "Maryland Whistleblower Law" statute under which she brings her claim.[6]

---

[6] Defendant treats Plaintiff's claim as one brought under a subtitle within the State Personnel and Pensions article captioned "Maryland Whistleblower Law in the Executive Branch of State Government." See ECF No. 11-1 at 17-18. But there are several statutes providing whistleblower protections in Maryland with varying covered employees and statutes of limitations. *See, e.g.*, Md. Code Ann. State Gov't § 20-606(f) (providing some whistleblower protections to certain public sector employees for certain protected activities, such as making a charge in an investigation or hearing related to

Without identifying the statute upon which this claim rests, and without articulating why Plaintiff's termination would have met the standard for whistleblower protection under such (unspecified) statute, Plaintiff has not sufficiently stated a claim upon which relief can be granted and Defendant's motion to dismiss will be granted as to count 9.

As to the constructive discharge claim (count 10), Ms. Tapp-Harper alleges that Defendant's decision to place her on administrative leave without cause "created intolerable working conditions" and that the Sheriff did so "with the intention of forcing Plaintiff to resign or retire." ECF No. 10 ¶¶ 80, 82. Defendant argues that (a) Ms. Tapp-Harper did not resign but instead was terminated and (b) she has not alleged sufficient facts to plead intolerable working conditions. ECF No. 15 at 7. Constructive discharge takes place when "an employer creates intolerable working conditions . . . [that] force the employee to resign." *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994). An adverse action such as a demotion that "is essentially a career-ending action or a harbinger of dismissal" can qualify as constructive discharge. *Id.* at 459.

Without deciding whether Ms. Tapp-Harper's placement on administrative leave could support her constructive discharge claim, Ms. Tapp-Harper has not alleged sufficient facts to support that her working conditions were objectively intolerable. *See Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004) (inquiry regarding the intolerability of working conditions is objective). Although the complaint alleges that her "working conditions were so intolerable that a reasonable person in her position would have felt compelled to resign or retire," ECF No. 10 ¶ 83, Ms. Tapp-Harper submitted her

---

employer discrimination); Md. Code Ann., State Fin. & Proc. §§ 11-301 through 11-306 (providing some whistleblower protections to state contractor employees).

retirement paperwork with an effective date of February 1, 2023—which would have required her to stay on for two more months. *See id.* ¶ 13. Ms. Tapp-Harper's willingness to stay for an additional two months renders implausible her conclusory allegation that the working conditions were objectively intolerable. *Cf. Bodkin v. Town of Strasburg, Va.*, 386 F. App'x 411, 413 (4th Cir. 2010) (employee's ability to "select the effective date of [] resignation" is relevant to whether resignation was involuntary for purposes of a constructive discharge claim); *see also Suders*, 542 U.S. at 141 (noting that constructive discharge doctrine relates to "unendurable" working conditions). Therefore, Defendant's motion to dismiss will be granted as to count 10.

### *ii.* **Plaintiff has stated a claim for retaliation**

But as to the retaliation claim under Title VII (count 3), in which Plaintiff alleges that her placement on administrative leave and termination were retaliation for the filing of her EEO complaint, ECF No. 10 ¶¶ 41, 42, Ms. Tapp-Harper has sufficiently stated a claim on which relief can be granted.

To state a claim for retaliation under Title VII, a plaintiff must allege facts showing "(i) that she engaged in protected activity, (ii) that her employer took adverse action against her, and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Noonan v. Consol. Shoe Co., Inc.*, 84 F. 4th 566, 574 (4th Cir. 2023) (quoting *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 653 (4th Cir. 2021)). Defendant argues that Ms. Tapp-Harper has not alleged that Sheriff Cogen was aware of the protected activity, and that she has not sufficiently pled a causal link between her EEO complaint and her placement on administrative leave or

her termination because "nearly fifteen months" passed between her internal complaint in September 2021 and her termination in December 2022. ECF No. 11-1 at 13–14.[7]

Here, accepting all of Plaintiff's factual allegations as true and drawing all reasonable inferences in her favor, as the Court must do upon review of a motion to dismiss, *see King*, 825 F.3d at 212, Ms. Tapp-Harper has stated a claim for retaliation. She has alleged that she engaged in protected activity (*i.e.*, filing an EEO complaint in which she alleged gender and race discrimination); that her employer took adverse action against her by putting her on administrative leave and then terminating her employment, ECF No. 10 ¶¶ 39, 41; and that Sheriff Cogan was aware, at the time of her termination, that Plaintiff had filed the EEO complaint that was settled in August 2022. *Id.* ¶¶ 7-9, 40. And with respect to causation, she has alleged that she named then-Assistant Sheriff Cogen in her EEO complaint specifically related to allegations "concerning the [racially] disparate application and enforcement of agency policies," *id.* ¶ 7, and that, within hours of Defendant being sworn in as Sheriff, she was placed on administrative leave as discipline, which she alleges was without "explanation[] or cause." *Id.* ¶¶ 11, 12.

Defendant focuses on the amount of time that passed between the filing of the EEO complaint in September 2021 and Ms. Tapp-Harper's termination in December 2022. But there is a reasonable inference that Sheriff Cogen's almost-immediate action upon taking office to place Ms. Tapp-Harper on administrative leave, after she had

---

[7] Sheriff Cogen's motion to dismiss states that Ms. Tapp-Harper was terminated in November 2022. ECF No. 11-1 at 14. Ms. Tapp-Harper alleges she was placed on administrative leave on November 30 and terminated "effective immediately" on December 27. For purposes of deciding the motion to dismiss, the Court accepts as true Plaintiff's allegation that she was terminated in late December 2022.

accused him of applying department policies in a racially disparate way, was retaliation for her prior filing of the EEO complaint. This is not to say that Sheriff Cogen *in fact* put her on leave or terminated Plaintiff because she had filed the EEO complaint, but rather that she has sufficiently alleged causation. That conclusion arises in part because Ms. Tapp-Harper has alleged that the day after she was promoted to Assistant Sheriff pursuant to the settlement agreement, Defendant "sent a communication" to the then-Sheriff "requesting a pause in certain administrative processes, including hiring and promotion." ECF No. 10 ¶¶ 9, 10. Although she does not allege what, if anything, came from that communication, her allegation permits the reasonable inference that Defendant did not have control over hiring and administrative processes at the time of her promotion because he had "not yet [been] officially elected to the office of Sheriff." *Id.* ¶ 10. Moreover, the settlement agreement does not preclude Plaintiff's retaliation claim because the claim did not arise until she experienced an adverse employment action, which took place after the execution of the settlement agreement. ECF No. 11-3 at 1 (excluding from the release "any claim that arises only after the date this Agreement is fully executed").

For these reasons, Plaintiff has adequately stated a claim for retaliation. Of course, this decision is based on Plaintiff's allegations, which the Court accepts as true; in denying the motion to dismiss the Court does not decide one way or the other whether Plaintiff will be able to prevail on her claim. But the allegations, accepted as true, are sufficient for Count 3 to proceed to discovery.

## III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion to dismiss as to counts 1, 2, and 4-10 and deny the motion as to count 3. The Court will also deny as

moot Defendant's motion to dismiss the original complaint. An appropriate order
follows.


Date:  August 21, 2025                 _____/s/_____
                                       Adam B. Abelson
                                       United States District Judge