**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| SABRINA TAPP-HARPER, | * | |
| *Plaintiff*, | | |
| v. | * | No. 1:24-cv-002498-ABA |
| SHERIFF SAMUEL COGEN, | | |
| *Defendant*. | * | |

* * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, Sheriff Samuel Cogen, submits this memorandum in support of his motion for summary judgment.

# TABLE OF CONTENTS

INDEX OF EXHIBITS .......................................................................................................... i

INTRODUCTION.................................................................................................................. 1

STATEMENT OF UNDISPUTED FACTS .......................................................................... 2

LEGAL PROCEEDINGS..................................................................................................... 9

LEGAL STANDARD…………………………………………………………….....10

ARGUMENT ........................................................................................................ ……..11

I. SHERIFF COGEN IS ENTITLED TO SUMMARY JUDGMENT ON MS. TAPP-HARPER'S TITLE VII RETALIATION CLAIM (COUNT III)……… ………………………….……11

A. SHERIFF COGEN LACKED ACTUAL KNOWLEDGE OF MS. TAPP-HARPER'S PROTECTED ACTIVITY AT THE TIME HE MADE THE REMOVAL DECISION……………………………………………………..…………12

B. EVEN IF A PRIMA FACIE CASE COULD BE ESTABLISHED, SHERIFF COGEN HAD A LEGITIMATE, NON-RETALIATORY REASON THAT MS. TAPP-HARPER CANNOT SHOW IS PRETEXTUAL…………………………….……………………………..17

CONCLUSION…………………………………………………………….………..19

## INDEX OF EXHIBITS


**Ex. 1 –** Tapp-Harper 2021 Internal EEO Complaint and Addendum ............................... 4

**Ex. 2** – Deposition of Sheriff Samuel Cogen .......................................................5-8,13,14

**Ex. 3 –** August 2022 Settlement Agreement ............................................................. 5

**Ex. 4** – Deposition of Sabrina Tapp-Harper........................................................ 5-8, 12-14

**Ex. 5** – December 2022 Termination Letter............................................................. 7

**Ex. 6** – Defendant's Answers to Interrogatories .......................................3, 5-7, 13, 15, 16

**Ex. 7** – September 2, 2022 Email.......................................................................... 6

**Ex. 8** – Plaintiff's Answers to Interrogatories........................................................ 6, 7, 16

## INTRODUCTION

This case has its roots in 2021, when Plaintiff Sabrina Tapp-Harper, then an employee of Baltimore City Sheriff John Anderson, filed an internal EEO complaint. A few weeks later, she filed an addendum to that complaint, naming then-Assistant Sheriff Samuel Cogen and alleging, based on his conduct at a command staff meeting attended by both of them, that he was responsible for the disparate application of agency policy concerning the recoupment of training funds.

In July 2022, Sheriff Anderson lost the Democratic primary to Cogen, who — facing no opponent in the general election — was all but certain to become the next Sheriff. The following month, in August 2022, outgoing Sheriff Anderson executed a settlement agreement with Ms. Tapp-Harper resolving her internal EEO complaint and addendum — an agreement that promoted her to an appointed, at-will position as Assistant Sheriff under his administration. That appointment did not survive the change in administration: when Sheriff Cogen took office on November 30, 2022, he implemented his decision to reorganize his command staff and, as part of that reorganization, suspended and later terminated Ms. Tapp-Harper along with four other at-will employees — a lawful and well-recognized prerogative of a newly elected sheriff, with a plan that had been in place well before his swearing-in.

Discovery has now closed, and the sworn testimony of both parties forecloses the only remaining count, retaliation, of the amended complaint. Ms. Tapp-Harper's own testimony confirms that, before he decided to suspend and terminate her along with four

other at-will employees the same morning he was sworn in, Sheriff Cogen did not know of her 2021 internal EEO complaint and he did not know that he had been named in the addendum to it. Ms. Tapp-Harper likewise does not refute that the decision to suspend and terminate her, together with four others, was made well before its execution on November 30, 2022. Indeed, Sheriff Cogen did not learn that he had been named in the addendum to Ms. Tapp-Harper's EEO complaint until she filed a federal EEOC charge in August 2023 — nearly a year after her termination. Ms. Tapp-Harper has no evidence or witness connecting her suspension and termination to the filing of her internal EEO complaint and addendum. Because the undisputed material facts foreclose Ms. Tapp-Harper's claim as a matter of law, Sheriff Cogen is entitled to summary judgment on the remaining count of retaliation.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### THE EEO COMPLAINT

In September 2021, Ms. Tapp-Harper, then a Major employed by then-Sheriff John W. Anderson of Baltimore City, filed an internal EEO complaint. *See* (Ex. 1, Internal EEO Complaint and Addendum.) That complaint alleged gender discrimination and a hostile work environment, centered around her claim that she had repeatedly been displaced from her office and reassigned in favor of male commanders, and focused more broadly on what she characterized as the "discriminatory use of the agency facilities as it relate[d] to [her]." (ECF No. 10, ¶ 7); *see also* (Ex. 1, Internal EEO Complaint and Addendum.) Later that same month, Ms. Tapp-Harper filed an addendum to her complaint, which raised allegations concerning then-Assistant Sheriff Cogen. *See* (Ex. 1, Internal EEO Complaint

and Addendum.) The addendum arose out of a Command Staff Meeting held on September 27, 2021, attended by both Ms. Tapp-Harper and Assistant Sheriff Cogen (along with then-Sheriff Anderson and other command staff), at which Cogen discussed the Office's pursuit of reimbursement from a former Black female employee who had separated from the agency before completing a required term of service following agency-funded training. *See id*. In her addendum, Ms. Tapp-Harper asserted that this reflected the disparate application and enforcement of agency policy — specifically, the policy governing recoupment of training funds from departing employees. *See id*. Notably, when later asked about his role in that process, Sheriff Cogen stated that he had no role in administering or enforcing the recoupment policy; he was simply asked to research the process and present the issue at that meeting. *See* (Ex. 2, Cogen Dep. 123:1-12; 309:7-20; 310:6-9.)

Relatedly, BCSO never took a single training-fund recoupment action against any employee — Ms. Wilkerson or otherwise — at any point between January 1, 2019 and December 31, 2022, spanning both the Anderson and Cogen administrations. *See* (Ex. 6, Def.'s Ans. to Interrog. No. 21) ("None."))

In August 2022, Ms. Tapp-Harper, then a Major employed by the Baltimore City Sheriff, withdrew her internal EEO complaint and addendum in exchange for entering into a settlement agreement with then-Sheriff Anderson resolving her September 2021 internal EEO complaint and addendum. *See* (Ex. 3, Settlement Agreement); (ECF No. 10, ¶¶ 7, 9.) In exchange for a promotion to the at-will appointed position of Assistant Sheriff, effective September 1, 2022, Ms. Tapp-Harper agreed to "hereby and forever release and discharge the State of Maryland, the Baltimore City Sheriff, and any member of the Baltimore City

Sheriff's Office from any claim, demand, right, or cause of action . . . including, but not limited to all claims, stated or unstated, of discrimination, harassment, and/or retaliation . . . arising from any events during [her] employment to date." (Ex. 3, Settlement Agreement.) Ms. Tapp-Harper conceded that the agreement contained no term of years and no for-cause termination restriction, and that Sheriff Anderson never told her the promotion would be protected from reversal by any incoming sheriff. *See* (Ex. 4, Tapp-Harper Dep. 111:7-14, 111:18-112:2, 140:15-141:5.) Sheriff Cogen was not a party to, and played no role in the settlement, as he had retired from his position of Assistant Sheriff in October 2021 to run for the position of Sheriff. *See* (Ex. 4, Tapp-Harper Dep. 39:4-21, 40:1-5); (Ex. 2, Cogen Dep. 224:12-16.)

**SHERIFF COGEN'S EMPLOYMENT HISTORY AND ELECTION**

Sheriff Cogen had a 25-year career with the Baltimore City Sheriff's Office, working his way up through the ranks to the position of Assistant Sheriff. (Ex. 2, Cogen Dep. 82:4-7.) He chose to retire on October 5, 2021, having become disenchanted with how then-Sheriff Anderson ran the office, with the intention of running for Sheriff of Baltimore City. (Ex. 2, Cogen Dep. 224:12-16.) Ms. Tapp-Harper has no evidence — documentary or otherwise — that Sheriff Cogen retired for any reason other than to run for Sheriff. She testified that Sheriff Cogen called her within a couple of months of his retirement and told her that he intended to run for Sheriff of Baltimore City, *see* (Ex. 4, Tapp-Harper Dep. 91:14-19, 92:1-5), and she does not know, and has no email, text, or other document establishing any other reason for his departure. *See* (Ex. 4, Tapp-Harper Dep. 91:5-10, 92:16-20.) In July 2022, Cogen won the primary election against incumbent

Sheriff John Anderson, and was elected Sheriff of Baltimore City on November 8, 2022, and sworn into office on November 30, 2022.[1] *See* (ECF No. 10, ¶¶ 11-12.) Between the date of winning the primary election and the date of his swearing-in, then Sheriff-elect Cogen worked on his plan for day one in office, including deciding who he would like to appoint to positions within his new administration and who he would like to terminate from the outgoing administration. *See* (Ex. 2, Cogen Dep. 314:2-12.)

Ms. Tapp-Harper filed her addendum naming then-Assistant Sheriff Cogen on September 29, 2021; Sheriff Cogen retired six days later, on October 5, 2021. *See* (Ex. 1, Internal EEO Complaint and Addendum); (Ex. 6, Def.'s Ans. to Interrog. Nos. 6-7.) Ms. Tapp-Harper has no evidence that Sheriff Cogen was made aware of the addendum, or of anything having "happened in the office" as a result of it, before he retired. *See* (Ex. 4, Tapp-Harper Dep. 88:15-89:5) (testifying she is "not sure if anything happened in the office," but that "days after [she] filed the addendum, Sheriff Cogen retired"). Sheriff Cogen's sworn interrogatory answers confirm the point: he did not become aware of the addendum naming him until August 2023 — nearly two years after his retirement and long after Ms. Tapp-Harper's suspension and termination. *See* (Ex. 6, Def.'s Ans. to Interrog. No. 7.)

**THE SEPTEMBER 2, 2022 TRANSITION COMMUNICATION**

[1] The 2022 primary election in Baltimore City was held in July 19, 2022. *See* Fed. R. Evid. 201; https://elections.maryland.gov/elections/archive/2022/primary_results/gen_results_2022_by_county_3_P.html (last visited August 14, 2026).

On September 2, 2022 — after winning the Democratic primary and while running unopposed in the general election — then-candidate Cogen sent correspondence to outgoing Sheriff Anderson proposing a transition process, designating a campaign point of contact, and requesting that Sheriff Anderson pause certain hiring, promotional, and budgetary actions pending the transition. *See* (Ex. 6, Def.'s Ans. to Interrog. No. 10); (Ex. 7, September 2, 2022 Email.) At the time, Sheriff Cogen held no office and had no legal authority over the Sheriff's Office — a fact Ms. Tapp-Harper does not dispute. *See* (Ex. 8, Pl.'s Ans. to Interrog. No. 10) (acknowledging that Cogen "had no legal authority to direct BCSO administrative operations, issue commands to the sitting Sheriff, or require any pause in lawful governmental functions"). The communication was, on its face, a request to the sitting Sheriff, not an exercise of legal authority Cogen did not have; by that point Cogen had already won the Democratic primary and was running unopposed in the general election, so the request reflected the practical reality that he would shortly take office rather than any assertion of present legal power. *See id.*; supra n.1.

Sheriff Anderson was free to disregard the request, and the record confirms that he did: Ms. Tapp-Harper — promoted to Assistant Sheriff the day before the communication was sent — continued serving in that position for nearly three more months, through the remainder of the Anderson administration, without interruption. *See* (Ex. 3, Settlement Agreement); (Ex. 4, Tapp-Harper Dep. 111:7-14.) Ms. Tapp-Harper was copied on the communication, but it did not reference her EEO complaint, its addendum, or any protected activity, and Sheriff Cogen did not learn that he had been named in the addendum until

nearly a year later, in August 2023. *See* (Ex. 8, Pl.'s Ans. to Interrog. No. 10); (Ex. 6, Def.'s Ans. to Interrog. No. 7.)

**THE COMMAND-STAFF REORGANIZATION, SUSPENSION, AND TERMINATION**

After winning the primary election in July 2022, Sheriff-elect Cogen began planning how he would institute the vision he campaigned on once elected. *See* (Ex. 2, Cogen Dep. 314:2-12.) Planning included conversations with some of his incoming command staff about who they would and would not terminate, because as a newly elected Sheriff, Sheriff-elect Cogen sought to bring in his own team. *See id*. On November 30, 2022, the morning he was sworn in, Sheriff Cogen put his plan into action and, with their replacements present, administratively suspended, with pay, five at-will employees (four of whom had no involvement with Ms. Tapp-Harper's internal EEO complaint and addendum) including Ms. Tapp-Harper, the chief deputy, and three others. *See* (Ex. 2, Cogen Dep. 68:1-11; 315:2-21); (Ex. 4, Tapp-Harper Dep. 126:19-127:14, 129:1-6.) As she was being suspended, Ms. Tapp-Harper provided her settlement agreement to her replacement, seemingly to stop Sheriff Cogen from suspending and terminating her employment despite the decision he had made prior to November 30, 2022. *See* (Ex. 2, Cogen Dep. 77:23-78:11.) Ms. Tapp-Harper was terminated on December 27, 2022. *See* (Ex. 5, Termination Letter); (ECF No. 10, ¶ 14.) Ms. Tapp-Harper was, at all relevant times, in an at-will appointed position with no contractual guarantee of continued employment. *See* (Ex. 4, Tapp-Harper Dep. 111:7-14, 111:18-112:2); *see also* (Ex. 4, Tapp-Harper Dep. 129:7-14) (acknowledging a newly elected sheriff's authority to appoint his own command-level leadership.)

**SHERIFF COGEN'S KNOWLEDGE (OR LACK THEREOF) OF THE EEO COMPLAINT**

Ms. Tapp-Harper concedes that she has no knowledge that anyone from the Sheriff's Office informed Sheriff Cogen of her internal EEO complaint and addendum before November 30, 2022, and that she personally never told Sheriff Cogen about the internal EEO complaint, addendum, or the settlement before he was sworn in on November 30, 2022. *See* (Ex. 4, Tapp-Harper Dep. 95:1-10, 95:17-21.) She has no witness who told her that Sheriff Cogen knew of her complaint before taking office, and no documentary evidence demonstrating his pre-swearing-in awareness. *See* (Ex. 4, Tapp-Harper Dep. 96:1-12, 121:20-122:3.) On November 30, 2022, at the time of suspension, Ms. Tapp-Harper handed a copy of her settlement agreement to her replacement, seemingly to dissuade Sheriff Cogen from suspending and terminating her employment. *See* (Ex. 4, Tapp-Harper Dep. 40:12-18, 97:17-98:13, 124:14-17.) That settlement agreement was conveyed to Sheriff Cogen after the suspension and termination decision had already been made and implemented, and it was the first time he became aware of the existence of an internal EEO complaint and addendum filed by Ms. Tapp-Harper. *See id.* Sheriff Cogen did not become aware of the substance of Ms. Tapp-Harper's internal EEO complaint and addendum until she filed a federal EEO complaint naming him in August 2023. *See* (Ex. 2, Cogen Dep. 180:14-181:22, 303:4-13, 317:10-19.)

**ABSENCE OF ANY DOCUMENTARY OR TESTIMONIAL LINK BETWEEN THE EEO COMPLAINT AND THE ADVERSE ACTIONS**

Ms. Tapp-Harper produced no documentary evidence to support her belief that her termination was in any way related to her internal EEO complaint and addendum. *See* (Ex.

4, Tapp-Harper Dep. 121:20-122:3, 132:12-133:7.) She concedes that no one ever told her Sheriff Cogen made any such statement. *See* (Ex. 4, Tapp-Harper Dep. 121:6-19, 133:4-7.) All Ms. Tapp-Harper is left with is her disagreement with Sheriff Cogen's testimony that he did not terminate her because of her internal EEO complaint and addendum, and with his legitimate, non-retaliatory reason for her suspension and termination, "[t]hat [he] didn't want to reappoint her. [He] wanted to bring [his] own staff in[.]" (Ex. 2, Cogen Dep. 318:25-319:1.)

## LEGAL PROCEEDINGS

Ms. Tapp-Harper filed this lawsuit in August 2024, asserting seven claims. *See* (ECF No. 16 at 3.) After Sheriff Cogen moved to dismiss, *see* (ECF No. 9), Ms. Tapp-Harper filed an amended complaint adding three new counts. *See* (ECF No. 10, ¶¶ 66-86.) Sheriff Cogen then moved to dismiss the amended complaint, or in the alternative, for summary judgment, *see* (ECF No. 11), which Ms. Tapp-Harper opposed, *see* (ECF No. 12), and Sheriff Cogen replied. *See* (ECF No. 15.) The Court dismissed all counts except Count III, the retaliation claim against Sheriff Cogen. *See* (ECF No. 16.) That count alleges that Sheriff Cogen retaliated against Ms. Tapp-Harper "for amending her internal EEO complaint with the Baltimore City Sheriff's Office, naming then-Assistant Sheriff Cogen as responsible for the disparate application of agency policy concerning the recoupment of training funds." (ECF No. 10, ¶ 22.)

## LEGAL STANDARDS

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine disputes require "evidence . . . such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Overall, the inquiry is "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

At the summary judgment stage, "[t]he moving party . . . bears the burden of demonstrating the absence of any genuine dispute of material fact." *Hall v. Sheppard Pratt Health System, Inc.*, 749 F. Supp. 3d 532, 541 (D. Md. 2024). The Court "view[s] the evidence in the light most favorable to . . . the nonmovant, and draw[s] all reasonable inferences in his favor without weighing the evidence or assessing the witnesses' credibility." *Baynard v. Malone*, 268 F.3d 228, 234-35 (4th Cir. 2001). "Whether an inference is reasonable cannot be decided in a vacuum; it must be considered 'in light of the competing inferences' to the contrary." *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986)).

Once the moving party satisfies its burden, the nonmoving party must identify "specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue

for trial." *Hall*, 749 F. Supp. 3d at 541. The nonmoving party "must produce competent evidence on each element of his or her claim" and "may not create a genuine issue of material fact through mere speculation, or building one inference upon another." *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348-49 (D. Md. 2011) (internal quotations omitted). "The mere existence of a scintilla of evidence in support of the [nonmoving] party's position will be insufficient" to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252. Instead, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587; *see also Anderson*, 477 U.S. at 252 (summary judgment required where the evidence "is so one-sided that one party must prevail as a matter of law").

## ARGUMENT

### SHERIFF COGEN IS ENTITLED TO SUMMARY JUDGMENT ON MS. TAPP-HARPER'S TITLE VII RETALIATION CLAIM (COUNT III).

Sheriff Cogen is entitled to summary judgment on Ms. Tapp-Harper's claim of retaliation because she cannot prove a causal connection between her internal EEO complaint and addendum and her suspension and termination. Title VII prohibits retaliation against an employee for engaging in protected activity. 42 U.S.C. § 2000e-3(a). A prima facie case requires (1) protected activity, (2) a materially adverse employment action, and (3) a causal connection between the two. *See Magassouba v. Prince George's County*, 773 F. Supp. 3d 196 (D. Md. 2025). Sheriff Cogen does not dispute that Ms. Tapp-Harper engaged in protected activity or that her termination was materially adverse. This

motion is directed exclusively at causation — element three — which the summary judgment record cannot sustain.

Where, as here, direct evidence of retaliatory animus is lacking, courts apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973): the plaintiff must first establish a prima facie case; the burden of production then shifts to the employer to articulate a legitimate, non-retaliatory reason; and the burden shifts back to the plaintiff to show pretext. *Lacasse v. Didlake, Inc.*, 194 F. Supp. 3d 494 (E.D. Va. 2016), aff'd, 712 F. App'x 231 (4th Cir. 2018); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277 (4th Cir. 2004). A retaliation plaintiff must ultimately prove that her protected activity was the but-for cause of the adverse action, not merely a motivating factor. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). Causation additionally requires proof that the decision-maker had actual knowledge of the protected activity at the time of the adverse action. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653 (4th Cir. 1998) (knowledge "is absolutely necessary to establish [the causal connection] element.").

### A. Sheriff Cogen Lacked Actual Knowledge of Ms. Tapp-Harper's Protected Activity at the Time He Made the Removal Decision.

Under *Dowe*, actual decision-maker knowledge is an absolute prerequisite to causation, and the record forecloses that showing here. Sheriff Cogen retired from the Sheriff's Office in October 2021 — before Ms. Tapp-Harper's EEO complaint was resolved and before the settlement agreement resolving it was executed. *See* (Ex. 4, Tapp-Harper Dep. 39:8-11, 89:15-17, 93:2-5.) At the time of his retirement, Sheriff Cogen was

unaware of both her EEO complaint and its addendum. *See* (Ex. 4, Tapp-Harper Dep. 39:8-11, 89:16-17, 93:2-5.) Ms. Tapp-Harper conceded that she knows of no one at the Sheriff's Office who informed Sheriff Cogen of her EEO complaint before he made the decision to suspend and terminate her after taking office; that she never personally told him about it; and that she has no documentation evidencing his pre-swearing-in awareness of her EEO complaint. *See* (Ex. 4, Tapp-Harper Dep. 95:1-10, 17-21, 96:1-12, 121:20-122:3.) Ms. Tapp-Harper has also not refuted that after winning the primary election and before being sworn in, it was Sheriff Cogen's intention to suspend and terminate five at-will employees, including herself, so that he could bring in his own people. *See* (Ex. 2, Cogen Dep. 315:5-21.)

Sheriff Cogen's sworn interrogatory answers foreclose any inference of pre-retirement knowledge: he testified that he did not become aware of the addendum naming him until August 2023 — nearly two years after his retirement. *See* (Ex. 6, Def.'s Ans. to Interrog. No. 7.) That the addendum was filed only six days before his retirement does not undermine this testimony or supply the missing inference. Ms. Tapp-Harper has identified no witness, document, or other evidence that Sheriff Cogen learned of the addendum during that window; to the contrary, she testified that she does not know why he retired and has no email, text, or other document suggesting any reason beyond his stated intention — which he conveyed to her directly — to run for Sheriff. *See* (Ex. 4, Tapp-Harper Dep. 88:15-89:5, 91:5-19, 92:16-20); (Ex. 6, Def.'s Ans. to Interrog. No. 7.)

Sheriff Cogen's testimony closes the loop: the decision to suspend and terminate the employment of five at-will command employees, including Ms. Tapp-Harper, "was

going to happen anyway before I knew that . . . this [settlement agreement] even existed," with replacements "all there" the morning he was sworn in. (Ex. 2, Cogen Dep. 206:23-25, 315:5-21.) He had not "been made aware of the contents of the [settlement agreement] prior to receiving it," was aware of no pending internal or federal EEO complaint when sworn in, and did not learn of the substance of Ms. Tapp-Harper's internal EEO complaint — or that it named him — until August 2023. *See* (Ex. 2, Cogen Dep. 78:6-14, 303:4-13, 317:10-19, 181:1-8.)

Ms. Tapp-Harper's theory of retaliatory motive also rests on speculation. To establish causation, she must show more than that Sheriff Cogen eventually learned an EEO complaint existed — she must show a causal connection between her protected activity and his decision to suspend and terminate her. Paragraph 22 of the amended complaint grounds that causal theory specifically in Sheriff Cogen's personal exposure, alleging that he retaliated against her because she named him as "responsible for the disparate application of agency policy concerning the recoupment of training funds." (ECF No. 10 ¶ 22.) That theory necessarily assumes Sheriff Cogen had some reputational or professional stake in the recoupment decision that gave him a motive to punish her for the accusation. The undisputed record forecloses that assumption. Sheriff Cogen testified — and Ms. Tapp-Harper does not dispute — that he played no role in administering or enforcing the recoupment policy and was simply asked to research the process and present it at the September 27, 2021 meeting. *See* (Ex. 2, Cogen Dep. 123:1-12, 309:7-20, 310:6-9.) BCSO in fact never took a single recoupment action against any employee during the relevant period. *See* (Ex. 6, Def.'s Ans. to Interrog. No. 21.) And Sheriff Cogen has not

read the Amended EEO Complaint and does not know, even now, the specific allegations Ms. Tapp-Harper made against him concerning that policy. *See* (Ex. 6, Def.'s Ans. to Interrog. No. 22.) At most, the record shows that Sheriff Cogen researched and presented the recoupment issue at a single meeting, at the direction of then-Chief Deputy Henry Martin — not that he was the responsible decision-maker Ms. Tapp-Harper's addendum accused him of being, and not that he ever understood himself to be personally blamed for a policy he did not control. A person with no decision-making authority over a policy, and no awareness of ever having been accused of controlling it, has no discernible motive to retaliate against someone for criticizing how it was applied. It defies logic that Sheriff Cogen would retaliate against Ms. Tapp-Harper for criticizing his handling of a matter over which he had no decision-making or enforcement authority, and whose accusation, by his own sworn testimony, he has never even read. *See* (Ex. 2, Cogen Dep. 123:1-12, 310:6-9); (Ex. 6, Def.'s Ans. to Interrog. No. 22.) Absent evidence that Sheriff Cogen understood himself to be personally implicated in a policy he did not control, Ms. Tapp-Harper cannot show the causal nexus her own theory of the case requires.

Nor does the September 2, 2022 pre-election communication to Sheriff Anderson supply the missing link. Ms. Tapp-Harper's amended complaint characterizes that communication as sent "without legal authority," (ECF No. 10 ¶ 10), but Ms. Tapp-Harper's own interrogatory answers concede that then-candidate Cogen "had no legal authority to direct BCSO administrative operations, issue commands to the sitting Sheriff, or require any pause in lawful governmental functions" — which is precisely why it was a request rather than a directive, made by a candidate running unopposed in a general election

whose outcome was not seriously in doubt. *See* (Ex. 8, Pl.'s Ans. to Interrog. No. 10.) The request had no legal effect: Ms. Tapp-Harper continued serving as Assistant Sheriff, without interruption, for nearly three months after it was sent. *See* (Ex. 3, Settlement Agreement); (Ex. 4, Tapp-Harper Dep. 111:7-14.) And however the communication is characterized, it says nothing about Ms. Tapp-Harper's EEO complaint or addendum, which Sheriff Cogen would not learn of for another eleven months. *See* (Ex. 6, Def.'s Ans. to Interrog. No. 7.) An unremarkable transition request that predates a decision-maker's knowledge of protected activity, and that had no effect on the plaintiff's employment, cannot supply the causal connection Title VII requires.

For Ms. Tapp-Harper to meet her burden, she is required to provide " 'more evidence than mere curious timing coupled with speculative theories' about [alleged] 'discussions between a decisionmaker and someone with knowledge of the plaintiff's protected activity' that 'create[ ] only a speculative inference regarding the decisionmaker's awareness.'" *Roberts v. Glenn Indus. Grp., Inc.,* 998 F.3d 111, 126 (4th Cir. 2021) (quoting *E.E.O.C. v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017)). Additionally, "[m]ere 'labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement' are insufficient[.]" (ECF No. 16 at 4)(quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019.) Because the decision to suspend and terminate predated any knowledge of the protected activity, and because Sheriff Cogen never learned of the EEO complaint's substance or that it named him until long after the termination, Ms. Tapp-Harper's prima facie case fails at the threshold, and, as this Court has already made clear, a "prima facie case under

*McDonnell Douglas* . . . is an evidentiary standard" that Ms. Tapp-Harper has not met. (ECF No. 16 at 8.)

### B. Even if a Prima Facie Case Could Be Established, Sheriff Cogen Had a Legitimate, Non-Retaliatory Reason That Ms. Tapp-Harper Cannot Show is Pretextual.

Even assuming knowledge, Sheriff Cogen has articulated a facially legitimate, non-retaliatory reason for the termination: a newly elected sheriff's reorganization of his at-will command staff, an incident of a change in administration. Ms. Tapp-Harper acknowledges that a newly elected sheriff has the authority to appoint his own command-level leadership; *see* (Ex. 4, Tapp-Harper Dep. 129:7-14, 129:19-130:4.)

Sheriff Cogen's own testimony supplies the reorganization record stating: "[t]hat I didn't want to reappoint her. I wanted to bring my own staff in," and, "I was bringing in my own people." (Ex. 2, Cogen Dep. 318:25-319:1.) Five at-will employees were relieved by uniform directive the same morning, suspended with pay, in an effort for Sheriff Cogen to carry out his vision of installing his own people who were present and ready for the positions. *See* (Ex. 2, Cogen Dep. 68:5-11.)

The undisputed scope of that reorganization independently defeats causation under the but-for standard the Supreme Court articulated in *Nassar*. *See* 570 U.S. at 360. Sheriff Cogen suspended five at-will command-level employees — not Ms. Tapp-Harper alone — by uniform directive on the single morning he took office, with replacements for each already selected and in place. *See* (Ex. 2, Cogen Dep. 68:1-11, 315:2-21.) Four of those five employees had no connection whatsoever to Ms. Tapp-Harper's EEO complaint or its addendum. *See* (Ex. 2, Cogen Dep. 68:1-11); (Ex. 4, Tapp-Harper Dep. 126:19-127:14,

129:1-6.) Ms. Tapp-Harper was not singled out; she was one of five command-level holdovers displaced by the same decision, applied the same way, on the same day, for the same stated reason. A reorganization that treats the plaintiff no differently than similarly situated employees who share none of her protected characteristics or activity is powerful evidence that the protected activity was not the but-for cause of her removal — indeed, it is difficult to reconcile with a but-for theory at all, since Sheriff Cogen would necessarily have suspended and terminated Ms. Tapp-Harper as part of the same reorganization regardless of whether she had ever filed an EEO complaint. Ms. Tapp-Harper has no evidence to the contrary.

Nor can Ms. Tapp-Harper manufacture a jury question by disputing the wisdom of the reorganization. Whether Sheriff Cogen's decision to install his own command staff was a sound one is not a question for this Court or for a jury. "Rather, as the Fourth Circuit has made clear, a court in a Title VII action 'does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination.'" *Barbour v. Garland*, 105 F.4th 579, 593 (4th Cir. 2024) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). Absent any non-speculative basis to conclude that Sheriff Cogen was motivated by retaliatory animus, it is irrelevant whether Ms. Tapp-Harper or this Court deems his proffered reason "wise, fair, or even correct," so long as it truly was the reason for her removal. *Id*; *see also Brown v. Kennedy*, No. 23-CV-3442-ABA, 2026 WL 827153, at *7 (D. Md. Mar. 25, 2026) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997)

(finding it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.")

The corollary is that Ms. Tapp-Harper's own disagreement with the decision is not evidence of pretext. What matters is the perception of the decisionmaker, not the self-assessment of the plaintiff. *See King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003). A plaintiff cannot manufacture a triable issue out of her own belief that the employer's stated reason is false; that belief must be anchored in record evidence. Ms. Tapp-Harper has identified none. She points to no document, no testimony, and no admission suggesting that the reorganization was anything other than what Sheriff Cogen described it to be — and, critically, no evidence at all disturbing the undisputed fact that four other command level employees with no connection to her EEO complaint were removed the same morning by the same directive. Her disagreement with the decision, standing alone, leaves Sheriff Cogen's explanation uncontroverted. On that record, summary judgment is appropriate.

Because Ms. Tapp-Harper cannot establish that Sheriff Cogen had actual knowledge of her protected activity at the time the termination decision was made, and because she cannot show that his stated, uncontroverted reason for the reorganization was pretextual, the Court should grant summary judgment for Sheriff Cogen on the remaining count, Count III.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion for summary judgment.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Alexis I. Gbemudu
Alexis I. Gbemudu
Federal Bar No. 22021
Assistant Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
agbemudu@oag.maryland.gov
(410) 576-7011 (telephone)
(410) 576-6955 (facsimile)

August 19, 2026

Attorneys for Defendant