**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | | |
|---|---|---|
| SABRINA TAPP-HARPER,<br>Plaintiff<br><br>v.<br><br>SHERIFF SAMUEL COGEN,<br>In his individual and official capacity<br>Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil No.: **1:24-cv-2498-ABA** |

*********************************************************************************

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

(ECF No. 33)

Sheridan T. Yeary, Esq.; #21657
THE YEARY FIRM, LLC
P.O. Box 682
Columbia, Maryland 21045
(202) 770-7204
styeary@yearylegal.com

*Counsel for Plaintiff Sabrina Tapp-Harper*

**Dated:** September 2, 2026

# TABLE OF CONTENTS


INTRODUCTION .......... 1

RESPONSE TO DEFENDANT'S ASSERTED UNDISPUTED FACTS .......... 3

STANDARD OF REVIEW .......... 9

ARGUMENT .......... 10

I. THE RECORD PERMITS A FINDING OF CAUSATION BECAUSE COGEN KNEW OF PLAINTIFF'S PROTECTED ACTIVITY BEFORE TERMINATING HER. .......... 10

A. Knowledge of protected activity—not mastery of every allegation—is the governing inquiry. .......... 11

B. Defendant's own evidence establishes actual knowledge before the December 27 termination. .......... 13

C. The alleged pre-November 30 "decision" was neither dated nor demonstrably final. .......... 14

D. Circumstantial evidence also permits a reasonable inference concerning the November 30 suspension. .......... 16

E. Roberts does not permit the Court to disregard admitted knowledge and conflicting testimony. .......... 17

II. DEFENDANT'S "OWN STAFF" EXPLANATION PRESENTS A CLASSIC PRETEXT QUESTION. .......... 18

A. The five-person "uniform directive" is neither uniform nor independently dispositive. .......... 18

B. The asserted reason lacks contemporaneous support and shifts across the record. .......... 21

C. Selective retention and differential treatment undermine the asserted criterion. .......... 22

D. At-will authority and the super-personnel maxim do not immunize retaliation. .......... 23

CONCLUSION .......... 25

CERTIFICATE OF SERVICE .......... 26

INDEX OF EXHIBITS .......... 27

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 7

*Barbour v. Garland*, 105 F.4th 579 (4th Cir. 2024) .......... 19

*Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006) .......... 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 7

*DeJarnette v. Corning Inc.*, 133 F.3d 293 (4th Cir. 1998) .......... 19

*Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653 (4th Cir. 1998) .......... 9

*Foster v. Univ. of Maryland–Eastern Shore*, 787 F.3d 243 (4th Cir. 2015) .......... 8, 14, 20

*Guessous v. Fairview Property Investments, LLC*, 828 F.3d 208 (4th Cir. 2016) .......... 8, 17

*Haynes v. Waste Connections, Inc.*, 922 F.3d 219 (4th Cir. 2019) .......... 8, 17, 18

*King v. Rumsfeld*, 328 F.3d 145 (4th Cir. 2003) .......... 19

*Lettieri v. Equant Inc.*, 478 F.3d 640 (4th Cir. 2007) .......... 10

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......... 7

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .......... 8

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) .......... 8, 12, 14, 20

*Roberts v. Glenn Industrial Group, Inc.*, 998 F.3d 111 (4th Cir. 2021) .......... 14

*Strothers v. City of Laurel*, 895 F.3d 317 (4th Cir. 2018) .......... 9, 10

*Tolan v. Cotton*, 572 U.S. 650 (2014) .......... 7

*University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013) .......... 8

### Statutes

42 U.S.C. § 2000e-3(a) .......... 8

### Rules

Fed. R. Civ. P. 56 .......... 1, 7, 10, 20

D. Md. Local Rule 105.5 .......... 22

## INTRODUCTION

Defendant's motion depends on treating his own disputed account as an undisputed fact. It asks the Court to accept that Sheriff Cogen irrevocably decided to terminate Plaintiff before November 30, to disregard his admitted knowledge of her protected EEO activity before the actual December 27 termination, and to treat the phrase "my own staff" as self-proving. Rule 56 permits none of those steps.

Defendant's Motion for Summary Judgment is docketed at ECF No. 33, with its supporting memorandum at ECF No. 33-1. The motion is narrow. Defendant does not dispute that Plaintiff engaged in protected activity or that termination was materially adverse. ECF No. 33-1 at 11–12. He argues only that causation fails because he allegedly lacked actual knowledge when he made a preexisting "removal decision," and that, in any event, he uniformly removed five at-will holdovers to install his own command staff. *Id.* at 12–19. Defendant's own exhibits refute the premise that no reasonable jury could find otherwise.

First, the motion collapses two distinct acts separated by twenty-seven days. On November 30, Cogen suspended Plaintiff. On December 27, he signed a letter terminating her "effective immediately." ECF No. 33-7 at 1–2 (BCSO Supp. 000110–111). Between those acts, Cogen indisputably knew that Plaintiff had filed an EEO complaint and that the settlement before him exchanged withdrawal of that complaint and its addendum for her promotion. ECF No. 33-5 at 1–2 (STH-034–035); ECF No. 33-8 at 5 (Def.'s Ans. Interrog. No. 6). Cogen admitted this in the very deposition excerpts Defendant filed: "I know there's one," he testified of the EEO complaint; he also acknowledged that he was "getting ready to make a personnel move" in December and nevertheless did not ask HR or the EEO officer what the complaint concerned. ECF No. 33-4 at 7–8 (Cogen Dep. 180:1–181:25).

Second, the August 2023 knowledge date on which the motion relies is not even Cogen's only sworn account. In the full deposition, Cogen testified that, after the suspension, "some time afterwards I found out that . . . I was amended in," and placed that discovery before the December 27 termination. Cogen Dep. 174:3–175:17 (Pl.'s Ex. 1 at 10–11). A court cannot resolve that contradiction in the movant's favor.

Third, the alleged pre-knowledge decision is undated and conditional. Cogen could not identify exactly when he selected Plaintiff. ECF No. 33-4 at 15 (Cogen Dep. 315:2–21). Defendant's later Rule 36 response supplies only a four-and-one-half-month range. Def.'s Resp. RFA B.5–6 (Pl.'s Ex. 3 at 5). Cogen further testified that after receiving the EEO settlement he asked whether anything prevented him from "following through" with termination, ECF No. 33-4 at 9 (Cogen Dep. 206:1–25), and elsewhere described his position as an "intention" subject to legal advice. Cogen Dep. 267:11–271:25 (Pl.'s Ex. 1 at 18–22). A jury could find that termination did not become final until after knowledge.

Finally, "own staff" is a reason to be tested, not a verdict. Defendant identifies no contemporaneous selection memorandum, date, or objective criteria. Cogen did not replace all command personnel, knew of no performance deficiency or disciplinary investigation involving Plaintiff, did not assess whether she would support his administration, and retained another Anderson supporter after giving him a transition conversation Plaintiff did not receive. Def.'s Resp. RFA B.16–23 (Pl.'s Ex. 3 at 7–8); Cogen Dep. 281:17–286:15, 320:8–321:16, 347:23–348:25 (Pl.'s Ex. 1 at 32–37, 43–46). Stewart corroborated that Plaintiff was the only person among those suspended or terminated on or after November 30 who had an EEO settlement, and that the single Assistant Sheriff position existing in November 2022 later became three positions. Stewart Dep. 143:5–18, 146:17–147:8 (Pl.'s Ex. 2 at 19, 22–23). Stewart also identified Cogen, Gruzs, and Martin

among the names relevant to her EEO investigation. *Id.* 29:2–9. That evidence prevents treating the motion's blanket assertion that the other four had "no involvement" as undisputed.

A jury may accept Cogen's account. But because a jury may also reject it, the motion must be denied.

**RESPONSE TO DEFENDANT'S ASSERTED UNDISPUTED FACTS**

Defendant did not number the factual paragraphs in his memorandum. Plaintiff responds below to the material propositions in the order presented.

1. **The EEO complaint personally implicated Cogen**. Plaintiff's September 7, 2021, complaint alleged sex discrimination and a hostile work environment and identified then-Assistant Sheriff Cogen's occupation of her office as an example of unequal treatment. ECF No. 33-3 at 1–4 (STH-024–027). Its September 29 addendum described Cogen's recoupment presentation, his answer that HR Director Eness Brown initiated the process, and a private conversation in which Cogen defended and then recast the threatened action. *Id.* at 7 (STH-030). Stewart confirmed that Cogen was among the names relevant to her EEO investigation. Stewart Dep. 28:21–29:9 (Pl.'s Ex. 2 at 6–7). Whether Cogen ultimately controlled recoupment or whether money was collected does not alter that the protected complaint identified his conduct.
2. **The settlement memorialized protected activity; it did not extinguish future Title VII rights**. The agreement promoted Plaintiff effective September 1, 2022, in exchange for withdrawal of her September 7 complaint "amended on September 29, 2021." ECF No. 33-5 at 1–2 (STH-034–035). It expressly excludes "any claim that arises only after" execution. *Id.* at 1. Plaintiff's at-will status and Cogen's non-signatory status do not answer whether a later termination was retaliatory.

3. **The timing of the alleged decision is disputed**. Cogen testified that transition discussions began after the July primary but could not say when he "specifically decide[d] to suspend" the five employees. ECF No. 33-4 at 14–15 (Cogen Dep. 314:2–315:21). His Rule 36 response gives only a July 19–November 30 range. Def.'s Resp. RFA B.5–6 (Pl.'s Ex. 3 at 5). No contemporaneous decisional record fixes the date.
4. **The September 2 communication is probative context**. One day after Plaintiff's settlement promotion became effective, Cogen wrote the outgoing command—including Plaintiff and Brown—that "we expect" an "immediate[]" halt to "the promotional process for all" personnel to avoid "last-minute political favors." Pl.'s Ex. 4 at 2–3 (BCSO 000006); see Pl.'s Ex. 3 at 3 (Resp. RFA A.4) (admitting authenticity). Stewart testified that in nineteen years at BCSO she had never seen a communication like it; she also confirmed that Plaintiff's promotion had been announced agency-wide with a September 1 effective date and that Cogen's email was dated September 2. Stewart Dep. 84:11–16, 85:1–9, 85:16–86:20 (Pl.'s Ex. 2 at 8–10). Whether Cogen possessed legal authority and whether the request successfully rescinded Plaintiff's completed promotion is beside the point. Its timing, language, and acknowledged unusualness bear on motive and the credibility of his later explanation.
5. **The five-person account is not undisputed**. Defendant says four other removed employees had "no involvement" with Plaintiff's EEO matter. ECF No. 33-1 at 7, 17. Yet Stewart identified Jason Gruzs, Henry Martin, and Cogen among the names relevant to her investigation, and she testified that Plaintiff alone among those suspended or terminated on or after November 30 had an EEO settlement. Stewart Dep. 28:21–29:9, 146:17–147:8 (Pl.'s Ex. 2 at 6–7, 22–23). Defendant's exhibits likewise identify Gruzs as a comparator and meeting attendee and Martin as Plaintiff's supervisor and participant

in the complaint's events. ECF No. 33-3 at 2–3, 7 (STH-025–026, STH-030); ECF No. 33-4 at 2 (Cogen Dep. 68:1–19). And although the motion says replacements for all five were present, Cogen testified that one was an existing employee who had already given notice. ECF No. 33-4 at 15 (Cogen Dep. 315:13–25). No single person replaced Plaintiff; three people received Assistant Sheriff rank, while Stewart confirmed that the one Assistant Sheriff position existing in November 2022 later became three. ECF No. 33-8 at 6–7 (Def.'s Ans. Interrog. No. 12); Stewart Dep. 143:5–18 (Pl.'s Ex. 2 at 19).

6. **The settlement reached Cogen on November 30 and expressly disclosed EEO activity**. Cogen testified Reed returned with the agreement and "made sure that I had it" before Plaintiff was sent home. ECF No. 33-4 at 4 (Cogen Dep. 78:6–14). The agreement states twice that promotion was consideration for resolving and withdrawing Plaintiff's EEO complaint and addendum. ECF No. 33-5 at 1–2.

7. **Defendant admits actual EEO knowledge before termination**. Cogen's interrogatory answer states that he "became aware of Plaintiff's EEO Complaint filed on September 7, 2021, and subsequent settlement agreement on November 30, 2022." ECF No. 33-8 at 5 (Def.'s Ans. Interrog. No. 6). In deposition he agreed: "I know there's one," and acknowledged a contemplated December personnel move. ECF No. 33-4 at 7–8 (Cogen Dep. 180:1–181:25). His Rule 36 responses admit that before termination he knew the promotion was linked to EEO resolution. Def.'s Resp. RFA B.8–10 (Pl.'s Ex. 3 at 5–6).

8. **Cogen's knowledge of being named is subject to conflicting sworn testimony**. Defendant relies on an August 2023 date. ECF No. 33-1 at 5, 8, 13–16. But Cogen also testified that after the suspension, "some time afterwards I found out that . . . I was amended in," and understood that discovery to precede the December 27

termination. Cogen Dep. 174:3–175:17 (Pl.'s Ex. 1 at 10–11). That conflict alone bars judgment resting on the August 2023 account.

9. **Termination remained under active consideration after knowledge**. Cogen testified that the suspension and settlement were sent for advice on whether anything prevented him from "following through with the termination." ECF No. 33-4 at 9 (Cogen Dep. 206:1–25). Defendant admits he sought and received written advice before December 27. Def.'s Resp. RFA B.12–14 (Pl.'s Ex. 3 at 6–7). The final termination instrument is dated December 27 and says "effective immediately." ECF No. 33-7 at 1–2.

   Stewart independently confirmed the distinction Defendant tries to collapse: November 30 was a suspension, not a termination, and a training record listing November 30 as the termination date would be incorrect. Stewart Dep. 113:7–15, 116:21–117:11 (Pl.'s Ex. 2 at 16–18).

10. **There was no performance or disciplinary predicate**. Defendant admits no pending investigation or known performance deficiency warranted suspension of Plaintiff's police powers. Def.'s Resp. RFA B.16–17 (Pl.'s Ex. 3 at 7); Cogen Dep. 215:16–217:21 (Pl.'s Ex. 1 at 15–17). The motion therefore depends entirely on the credibility of the claimed reorganization.

11. **The contemporaneous and later explanations are not uniform**. The December 27 letter invokes only at-will authority; it does not mention a five-person reorganization, "own staff," policy alignment, or performance. ECF No. 33-7 at 1–2. Defendant's interrogatory answers do not identify a precise decision date, selection criteria, or supporting documents. ECF No. 33-8 at 4–5 (Def.'s Ans. Interrog. Nos. 3–5). Cogen's testimony alternates among termination, non-reappointment, installing his

own people, and perceived political/policy alignment. Cogen Dep. 267:11–281:25, 300:1–302:5 (Pl.'s Ex. 1 at 18–32, 38–40).

12. **Plaintiff offers record evidence, not subjective disagreement**. Defendant's admissions, Cogen's conflicting testimony, Defendant's writings, selective retention, the knowledge/decision timeline, and the absence of contemporaneous criteria are objective evidence from which a jury may reject the asserted reason.

**STANDARD OF REVIEW**

Summary judgment is proper only if the movant shows "no genuine dispute as to any material fact" and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine whenever a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the record as a whole in Plaintiff's favor, draw every reasonable inference for her, and refrain from weighing evidence or deciding credibility. *Id.* at 249, 255. *Tolan v. Cotton* specifically forbids crediting a movant's evidence while failing to acknowledge contrary evidence. 572 U.S. 650, 657–60 (2014).

*Celotex* does not permit judgment because Plaintiff's proof is circumstantial. It allows a movant to identify an evidentiary absence, after which the nonmovant must designate specific facts, through materials that can be presented in admissible form, showing a genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); Fed. R. Civ. P. 56(c)(1)–(2). Plaintiff does so through Defendant's admissions, deposition testimony, and authenticated documents. Nor may a court select among competing reasonable inferences; summary judgment is proper only when the record as a whole could not lead a rational trier of fact to find for the nonmovant. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88 (1986).

Title VII prohibits retaliation against an employee because she opposed conduct made unlawful by Title VII or participated in a protected process. 42 U.S.C. § 2000e-3(a). Where retaliatory intent is proved circumstantially, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. Plaintiff makes a prima facie showing through protected activity, material adversity, and causal connection. The employer then articulates a legitimate reason; Plaintiff may prevail by showing that reason is pretextual and retaliation was a but-for cause. *Foster v. University of Maryland–Eastern Shore*, 787 F.3d 243, 249–52 (4th Cir. 2015). *Foster* holds that *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), did not heighten the prima facie burden or displace burden shifting. *Id.* at 251–52.

At the final stage, a prima facie case plus evidence allowing rejection of the employer's explanation ordinarily permits the factfinder to infer unlawful intent. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147–48 (2000). The evidence must be assessed cumulatively, including timing, inconsistent explanations, selective treatment, deviations, and lack of contemporaneous support. *Guessous v. Fairview Property Investments, LLC*, 828 F.3d 208, 218–20 (4th Cir. 2016); *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–26 (4th Cir. 2019).

## ARGUMENT

### I. THE RECORD PERMITS A FINDING OF CAUSATION BECAUSE COGEN KNEW OF PLAINTIFF'S PROTECTED ACTIVITY BEFORE TERMINATING HER.

Defendant concedes the first two prima facie elements. ECF No. 33-1 at 11–12. The sole question is whether the record permits a causal inference. It does. Cogen's actual knowledge by November 30, the December 27 termination, the uncertain and conditional

decision timeline, and conflicts in his testimony readily satisfy the prima facie causation burden, which "is not an onerous burden." *Strothers v. City of Laurel*, 895 F.3d 317, 335–37 (4th Cir. 2018).

### A. Knowledge of protected activity—not mastery of every allegation—is the governing inquiry.

Defendant converts *Dowe*'s knowledge rule into a requirement that Cogen knew every detail of Plaintiff's addendum and understood his personal exposure under the alleged recoupment policy. ECF No. 33-1 at 13–15. That is not the law.

*Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998), requires evidence that the relevant decisionmaker knew of the employee's protected activity. *Strothers* explains the practical inquiry: an employer has knowledge when it understands, or reasonably should understand, that the employee is opposing conduct prohibited by Title VII. 895 F.3d at 335–36. Neither case demands that the decisionmaker read the complaint, agree with its merits, or know every respondent and allegation.

Cogen indisputably knew what matters: Plaintiff had filed an EEO complaint, and the promotion he was considering undoing was the agreed consideration for withdrawing it and its addendum. ECF No. 33-5 at 1–2; ECF No. 33-8 at 5. A settlement that expressly says "discrimination," "harassment," "retaliation," "internal EEO Complaint dated September 7, 2021," and "amended on September 29, 2021" does not merely hint at protected activity. It identifies it.

Defendant's extended recoupment discussion therefore misses the point. ECF No. 33-1 at 13–15. Whether Cogen controlled recoupment, whether a collection occurred, and whether Plaintiff correctly understood his role might bear on how a jury evaluates motive.

They do not erase his knowledge that she engaged in EEO activity. Title VII protects reasonable opposition even when the underlying allegation is disputed; a retaliation plaintiff need not first prove the discrimination she opposed. *Strothers*, 895 F.3d at 327–31.

Nor does Cogen's claim that he "has not read the complaint" establish lack of knowledge. ECF No. 33-8 at 9 (Def.'s Ans. Interrog. No. 22). A jury may view his professed failure to read the central document after learning of it—and after deciding to make a personnel move—as deliberate avoidance rather than exoneration. Cogen knew Stewart handled EEO matters yet admitted he did not ask her or HR what the complaint concerned. ECF No. 33-4 at 7–8 (Cogen Dep. 180:14–181:25). Rule 56 does not require the Court to reward that asserted ignorance.

**B. Defendant's own evidence establishes actual knowledge before the December 27 termination.**

Defendant's Exhibit 6 supplies the admission: "Sheriff Cogen became aware of Plaintiff's EEO Complaint filed on September 7, 2021, and subsequent settlement agreement on November 30, 2022." ECF No. 33-8 at 5 (Def.'s Ans. Interrog. No. 6). Defendant's Exhibit 2 says the same. Cogen testified that Reed handed him the settlement showing Plaintiff "had filed an EEO complaint"; he agreed, "I know there's one," and acknowledged that he was "getting ready to make a personnel move" in December. ECF No. 33-4 at 7–8 (Cogen Dep. 180:1–181:25).

The actual termination followed on December 27. ECF No. 33-7 at 1–2. Twenty-seven days between admitted knowledge and termination supports prima facie causation. See *Strothers*, 895 F.3d at 336–37 (one-day interval sufficient); *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (intervening retaliatory events support causation even when

temporal proximity alone is lacking). The interval is especially probative because Cogen was actively obtaining advice about whether anything prevented the termination. ECF No. 33-4 at 9; Def.'s Resp. RFA B.12–14 (Pl.'s Ex. 3 at 6–7).

The record goes further. In testimony omitted from Defendant's excerpts, Cogen stated that after suspension "some time afterwards I found out that . . . I was amended in," and placed that knowledge before the December 27 termination. Cogen Dep. 174:3–175:17 (Pl.'s Ex. 1 at 10–11). Defendant cannot obtain judgment by presenting a later August 2023 account while withholding the contradictory passage from its own witness. Which recollection is accurate is a jury question.

Stewart supplied additional circumstantial evidence of information flow within the new command. After Cogen assumed office, Dawson—the command official who supervised HR—asked Stewart specifically for Plaintiff's EEO investigative file. Stewart testified that the file had already been cataloged away, that she retrieved and gave it to Dawson, and that she did not know how Dawson knew to ask for that particular file. Stewart Dep. 90:21–91:19, 92:4–14, 93:3–11 (Pl.'s Ex. 2 at 11–14). Stewart could not date the request and did not testify that Dawson relayed the file to Cogen. *Id.* 91:5–7, 92:8–11. But a jury may consider the targeted retrieval by the new command official over HR together with Cogen's admitted knowledge and the ongoing termination review; the Court may not draw the defense-favorable inference that the request was unrelated.

### C. The alleged pre-November 30 "decision" was neither dated nor demonstrably final.

Defendant argues that knowledge came too late because the suspension and termination decision had already been made. ECF No. 33-1 at 12–13. But the record permits a jury to find an evolving intention, not a completed and irrevocable decision.

Cogen could not say when he "specifically decide[d]" to suspend Plaintiff. ECF No. 33-4 at 15 (Cogen Dep. 315:2–21). Defendant's Rule 36 answer gives only the period "between" July 19 and November 30. Def.'s Resp. RFA B.5–6 (Pl.'s Ex. 3 at 5). His interrogatory answers identify no date, criteria, or document supporting the selection. ECF No. 33-8 at 4–5 (Def.'s Ans. Interrog. Nos. 3–5). That evidentiary gap matters because Defendant bears the burden of showing there is no genuine timing dispute.

More fundamentally, suspension was not termination. Defendant admits the November 30 suspension occurred "in anticipation of" possible non-reappointment and that Cogen lacked case-specific written advice at that time. Def.'s Resp. RFA B.14–17 (Pl.'s Ex. 3 at 7). Cogen testified that he then sent the documents for review to determine whether anything prevented him from "following through with the termination." ECF No. 33-4 at 9 (Cogen Dep. 206:1–25). In the full transcript, he described his position as an "intention" subject to contrary advice. Cogen Dep. 267:11–271:25 (Pl.'s Ex. 1 at 18–22). The final instrument was not signed until December 27. ECF No. 33-7 at 1–2.

A reasonable jury could therefore find that Cogen had formed a tentative plan before November 30 but made the final decision after learning of Plaintiff's EEO activity. That is enough. An employer cannot immunize a later retaliatory act by labeling an earlier intention final while the record shows continued deliberation and a later operative decision.

Cogen's statement that termination "was going to happen anyway," ECF No. 33-4 at 9 (206:23–25), does not eliminate the dispute. It is his ultimate conclusion on the very but-for issue the jury must decide. *Reeves* forbids treating a decisionmaker's denial as conclusive when other evidence permits disbelief. 530 U.S. at 147–48.

### D. Circumstantial evidence also permits a reasonable inference concerning the November 30 suspension.

Plaintiff's termination evidence independently defeats the motion. The suspension record also presents a jury question when reasonable inferences are drawn for Plaintiff.

The complaint and addendum personally identified Cogen and arose from events in which he participated. ECF No. 33-3 at 2, 7; Stewart Dep. 28:21–29:9 (Pl.'s Ex. 2 at 6–7). After the primary, Cogen maintained information channels with former colleagues and designated Dawson—still inside BCSO—as his transition point person. ECF No. 33-4 at 3, 5, 14 (Cogen Dep. 77:7–22, 82:10–25, 314:2–25). The day after Plaintiff's promotion became effective, Cogen demanded an immediate halt to promotions and condemned "last-minute political favors." Pl.'s Ex. 4 at 2–3 (BCSO 000006); see Pl.'s Ex. 3 at 3 (Resp. RFA A.4). Stewart confirmed that Plaintiff's promotion had been announced to all personnel, effective September 1, and that she had never seen a communication like Cogen's September 2 email in nineteen years at BCSO. Stewart Dep. 84:11–16, 85:1–9, 85:16–86:20 (Pl.'s Ex. 2 at 8–10). A jury could infer that the only newly promoted Assistant Sheriff copied on that message was among its intended subjects.

Defendant says the communication was merely a legally ineffective transition request and did not mention EEO. ECF No. 33-1 at 15–16. Plaintiff does not claim the email itself rescinded her promotion. Its relevance is circumstantial: timing, focus, language, and Cogen's later action. The absence of the letters "EEO" from a transition demand does not make the demand irrelevant.

The motion also misuses Plaintiff's testimony that she personally did not know who told Cogen before swearing-in. ECF No. 33-6 at 9–10 (Tapp-Harper Dep. 95:1–96:17). A witness's lack of personal knowledge is not affirmative proof that the event did not occur. The jury must assess the available circumstantial evidence and Cogen's credibility.

At minimum, even if the Court concludes that Plaintiff cannot prove pre-suspension knowledge, it must deny judgment as to the independently actionable December 27 termination.

### E. *Roberts* does not permit the Court to disregard admitted knowledge and conflicting testimony.

Defendant relies on *Roberts v. Glenn Industrial Group, Inc.*, 998 F.3d 111, 126 (4th Cir. 2021), for the proposition that curious timing and speculative conversations do not prove decisionmaker knowledge. ECF No. 33-1 at 16. The distinction is decisive: *Roberts* found no evidence that the decisionmaker knew of the plaintiff's protected complaints. 998 F.3d at 124–26. Here the decisionmaker admits knowledge of Plaintiff's EEO complaint and settlement before termination. ECF No. 33-8 at 5; ECF No. 33-4 at 7–8.

Plaintiff does not ask the Court to stack speculation. She relies on admissions, a written settlement, close timing, a post-suspension legal-review process, an undated alleged decision, and conflicting testimony about when Cogen learned he was named. *Roberts* does not authorize a court to erase those facts.

## II. DEFENDANT'S "OWN STAFF" EXPLANATION PRESENTS A CLASSIC PRETEXT QUESTION.

Defendant has articulated a facially legitimate reason: an incoming sheriff wished to install his own command staff. ECF No. 33-1 at 17. That satisfies only a burden of production. Plaintiff may defeat judgment with evidence allowing a jury to find the reason unworthy of credence and retaliation a but-for cause. *Foster*, 787 F.3d at 252; *Reeves*, 530 U.S. at 147–48. The record supplies multiple, mutually reinforcing reasons to do so.

**A. The five-person "uniform directive" is neither uniform nor independently dispositive.**

Defendant says the same action against five employees—four supposedly unconnected to Plaintiff's complaint—"independently defeats" but-for causation. ECF No. 33-1 at 17–18. It does not. Group action may be evidence of a nonretaliatory reason, but it is not a conclusive defense when the plaintiff's selection, circumstances, and final treatment are disputed.

The asserted uniformity is itself unsupported. Defendant does not identify evidence establishing what each of the five knew, what each did, whether each held a materially comparable role, or whether each was ultimately terminated under identical circumstances. Cogen's excerpt identifies the names, but not the claimed absence of EEO involvement. ECF No. 33-4 at 2 (Cogen Dep. 68:1–11). Plaintiff's deposition excerpt likewise establishes only that five people were suspended. ECF No. 33-6 at 22–24. Stewart, by contrast, testified that Plaintiff was the only person among those suspended or terminated on or after November 30 who had an EEO settlement. Stewart Dep. 146:17–147:8 (Pl.'s Ex. 2 at 22–23).

Defendant's own exhibits affirmatively undermine the categorical premise. Exhibit 2 identifies Jason Gruzs among the group and discusses Henry Martin in identifying who occupied the Chief Deputy position. ECF No. 33-4 at 2 (Cogen Dep. 68:1–19). Exhibit 1 repeatedly identifies Martin as Plaintiff's supervisor and a participant in the challenged events, identifies Gruzs as a male command comparator, and identifies both as present at the September 27 command meeting underlying the addendum. ECF No. 33-3 at 1–3, 7 (STH-024–026, STH-030). Stewart independently named Gruzs, Martin, and Cogen as persons relevant to her investigation. Stewart Dep. 28:21–29:9 (Pl.'s Ex. 2 at 6–7). This does not establish that Gruzs or Martin engaged in protected activity; it establishes that

Defendant cannot simply declare, without proof, that all four were wholly uninvolved with the complaint and use that unsupported declaration as an independent but-for defense.

Nor were replacements mechanically one-for-one. Cogen testified that one supposed replacement was already employed and had given notice. ECF No. 33-4 at 15 (Cogen Dep. 315:13–25). Defendant admitted that no single person replaced Plaintiff; he appointed three Assistant Sheriffs. ECF No. 33-8 at 6–7 (Def.'s Ans. Interrog. No. 12). Stewart confirmed that BCSO had one Assistant Sheriff position in November 2022 but later had three, and that Cogen appointed Jae Kim as one of them. Stewart Dep. 143:5–18, 145:12–146:4 (Pl.'s Ex. 2 at 19, 21–22). Cogen also admitted he did not replace the entire command staff. Cogen Dep. 282:7–23 (Pl.'s Ex. 1 at 33).

Most importantly, Plaintiff was uniquely situated because Cogen indisputably held her EEO settlement before deciding whether to execute the December termination. Cogen Dep. 273:1–23 (Pl.'s Ex. 1 at 24). A common initial suspension does not prove that protected activity played no role in the later individual decision.

### B. The asserted reason lacks contemporaneous support and shifts across the record.

The contemporaneous December 27 letter says only that Plaintiff was at will and could be terminated with or without cause or notice. ECF No. 33-7 at 1–2. It does not mention a command reorganization, five-person uniformity, "own staff," policy vision, political support, or any selection criterion. That omission is not independently dispositive, but a jury may weigh it.

Defendant's interrogatory answers are similarly thin. Asked for every reason, when it arose, who identified it, and all supporting documents, Defendant merely cross-referenced a generic assertion that Cogen and Whitaker decided which at-will services were

"no longer needed." ECF No. 33-8 at 4–5 (Def.'s Ans. Interrog. Nos. 3–5). Asked for all facts negating retaliation, Defendant again cross-referenced that answer. *Id.* at 10 (No. 25). No dated plan, objective criterion, contemporaneous list, or recommendation is identified.

Cogen's testimony supplies multiple formulations. He described termination, non-reappointment, installing his "own staff," inferred political/policy incompatibility based on support for Anderson, and a belief that new sheriffs reappoint command personnel. Cogen Dep. 267:11–281:25, 300:1–302:5 (Pl.'s Ex. 1 at 18–32, 38–40). A jury could view these as different descriptions of one transition. But under *Haynes*, it could also view substantial changes and post hoc elaboration as evidence that the asserted reason is not the true one. 922 F.3d at 225–26.

Defendant's own discovery response contains a further inconsistency the motion avoids. Interrogatory No. 20 identified an October 12, 2022, alleged document-expungement violation as misconduct. ECF No. 33-8 at 8–9. Yet the motion relies exclusively on reorganization and argues there was no individualized reason. ECF No. 33-1 at 17–19. A jury may question why Defendant invoked supposed misconduct in discovery but abandoned it when stating the reason for judgment—particularly where Defendant admits no investigation or performance deficiency warranted suspension. Def.'s Resp. RFA B.16–17 (Pl.'s Ex. 3 at 7).

Under *Guessous*, absent documentation for claimed decisional discussions and inconsistency between asserted and recorded reasons are probative of pretext. 828 F.3d at 219–20. The Court may not harmonize the record for Defendant.

### C. Selective retention and differential treatment undermine the asserted criterion.

Cogen testified that Plaintiff's support for Anderson suggested she would not share his vision. Cogen Dep. 300:1–302:5 (Pl.'s Ex. 1 at 38–40). Yet Defendant admits he knew Jae Kim financially supported Anderson, discussed Kim's future in the incoming administration, and retained him; Kim's support for Anderson did not prevent retention. Def.'s Resp. RFA B.19–23 (Pl.'s Ex. 3 at 7–8).

Defendant says Kim was operational while Plaintiff was a policymaker. Cogen Dep. 320:8–321:16 (Pl.'s Ex. 1 at 43–44). That distinction may persuade a jury, but it does not compel judgment. Both were command-level appointees evaluated by the same sheriff under a claimed loyalty/vision criterion, and Stewart confirmed that Cogen appointed Kim to Assistant Sheriff. Stewart Dep. 145:12–146:4 (Pl.'s Ex. 2 at 21–22). Stewart also knew of no HR policy restricting an employee's endorsement of a political candidate and was unaware of anyone previously subjected to adverse action for political affiliation. *Id.* 147:9–22. Cogen did not hold a comparable transition discussion with Plaintiff, did not ask whether she would support him, did not know her actual views, and identified no performance problem. Def.'s Resp. RFA B.16–17, B.22; Cogen Dep. 281:17–286:15, 347:23–348:25 (Pl.'s Exs. 3 and 1, respectively).

Comparator evidence need not stand alone. In *Haynes*, differences in comparator circumstances affected weight, but a combination of selective treatment and changing explanations created a jury question. 922 F.3d at 223–26. Here Kim's retention combines with admitted knowledge, close timing, the undated decision, lack of criteria, no performance predicate, and shifting explanations. The totality—not any one fact—supports pretext.

**D. At-will authority and the super-personnel maxim do not immunize retaliation.**

Plaintiff does not dispute that an incoming sheriff ordinarily may appoint command personnel or that her position lacked a fixed term. ECF No. 33-6 at 20–21, 24 (Tapp-Harper Dep. 111:7–112:2, 129:7–130:4). But authority to terminate without cause is not authority to terminate for a federally prohibited reason. Title VII regulates motive, including in discretionary decisions. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 63–68 (2006).

The settlement likewise need not guarantee tenure to be relevant. It proves protected activity, shows what Cogen knew, links the EEO complaint to the promotion he was considering undoing, and expressly preserves later-arising claims. ECF No. 33-5 at 1–2. Plaintiff invokes it as retaliation evidence, not as an independent contract count.

Defendant's "super-personnel department" cases do not change the result. ECF No. 33-1 at 18–19. The court asks whether the employer's stated reason was the true reason, not whether the decision was "wise, fair, or even correct." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). But courts and juries do decide whether the asserted judgment was honest. Indeed, *Barbour v. Garland*, 105 F.4th 579 (4th Cir. 2024), reversed a Rule 12(b)(6) dismissal because the complaint plausibly alleged causation; the maxim did not foreclose that inquiry even at the pleading stage. *Id.* at 593–94.

Nor does *King v. Rumsfeld* reduce Plaintiff's evidence to self-assessment. 328 F.3d 145, 149 (4th Cir. 2003). Plaintiff does not rely on her belief that she deserved retention. She relies on Cogen's admissions, conflicting knowledge accounts, an undated and conditional decision, close timing, Defendant's own documents, absence of stated criteria, and selective application of the asserted rationale. Those are objective facts.

Under *Reeves* and *Foster*, a jury that rejects the "own staff" account may infer the unlawful explanation, particularly where Defendant concedes protected activity and adverse action and the decisionmaker admits knowledge before the final act. *Reeves*, 530 U.S. at 147–48; *Foster*, 787 F.3d at 252. *Nassar*'s but-for standard does not mean retaliation must be the sole cause; it asks whether the adverse action would have occurred absent the protected activity. 570 U.S. 338, 350, 362 (2013). That counterfactual is disputed and belongs to the jury.

**CONCLUSION**

The motion can prevail only if the Court accepts Cogen's preferred testimony, treats an undated intention as an irrevocable decision, ignores his admitted knowledge before the December 27 termination, assumes the other four employees were uniformly situated and EEO-unconnected, and treats "own staff" as conclusive despite contrary objective evidence. Rule 56 requires the opposite approach.

Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment. At an absolute minimum, the Court should deny judgment as to the December 27, 2022, termination, which followed admitted knowledge of Plaintiff's protected EEO activity and an intervening decision-and-advice process.

**DATED:** September 2, 2026

Respectfully submitted,

THE YEARY FIRM, LLC

By: /s/ Sheridan T. Yeary
Sheridan T. Yeary, Esq.; #21657
P.O. Box 682
Columbia, Maryland 21045
(202) 770-7204
styeary@yearylegal.com
*Counsel for Plaintiff Sabrina Tapp-Harper*

**CERTIFICATE OF SERVICE**

I certify that on September 2, 2026, the foregoing Plaintiff's Opposition to Defendant's Motion for Summary Judgment was filed through the Court's CM/ECF system, which will send notice of electronic filing to all counsel of record, including:

Alexis I. Gbemudu, Assistant Attorney General
Office of the Attorney General of Maryland
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
agbemudu@oag.maryland.gov
Counsel for Defendant

/s/ Sheridan T. Yeary
Sheridan T. Yeary

**INDEX OF EXHIBITS TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| Exhibit No. | Description | Pages Cited in Opposition |
|---|---|---|
| 1 | Excerpts of the certified deposition transcript of Defendant Sheriff Samuel Cogen, taken May 18, 2026. | 10–11, 15–40, 43–46 |
| 2 | Excerpts of the certified deposition transcript of Tyra Stewart, taken July 9, 2026. | 6–14, 16–19, 21–23 |
| 3 | Defendant’s Responses to Plaintiff’s Requests for Admission, dated August 20, 2026. | 3, 5–8 |
| 4 | Email from Samuel Cogen dated September 2, 2022 (Bates BCSO 000006; authenticity admitted in Defendant’s Response to Plaintiff’s Request for Admission A.4). | 2–3 |

**Local Rule 105.5 Statement.** Plaintiff has filed only the deposition excerpts cited in the Opposition. Complete copies of the Cogen and Stewart deposition transcripts are available to the Court upon request.

**DATED:** September 2, 2026

**THE YEARY FIRM, LLC**

By: /s/ Sheridan T. Yeary
Sheridan T. Yeary, Esq., #21657
P.O. Box 682
Columbia, Maryland 21045
(202) 770-7204
styeary@yearylegal.com
*Counsel for Plaintiff Sabrina Tapp-Harper*