**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

SABRINA TAPP-HARPER, *

*Plaintiff*,

v. * No. 1:24-cv-002498-ABA

SHERIFF SAMUEL COGEN,

*Defendant*. *

* * * * * * * * * * * *

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, Sheriff Samuel Cogen, through counsel, respectfully submits this reply in support of his motion for summary judgment, ECF No. 33.

## INTRODUCTION

Plaintiff's opposition rests its causation theory for the December 27, 2022 termination on a single argument: that Sheriff Cogen's deposition testimony allegedly shows he knew he had been named in Ms. Tapp-Harper's EEO addendum before he terminated her, notwithstanding his sworn interrogatory answer placing that knowledge in August 2023. That argument does not survive the full record. Any ambiguity in the single passage Plaintiff relies on—Sheriff Cogen's testimony that "some time afterwards I found out that . . . I was amended in"—was fully resolved on redirect examination, when Sheriff Cogen confirmed without qualification that he had no knowledge of the EEO complaint's substance at either the November 30 suspension or the December 27 termination, and that he did not learn of it until August 2023. Sheriff Cogen's Rule 36 admissions—which Plaintiff filed as her Exhibit 3 (ECF No. 36-3), served after that deposition—again confirm the same account twice more. Plaintiff's opposition does not mention the redirect

testimony, and it quotes those admissions selectively, omitting the language that forecloses her theory.

This reply proceeds in two parts. Part I addresses Plaintiff's factual assertions, several of which mischaracterize or selectively quote the record. Part II explains why, even construing every genuine ambiguity in Plaintiff's favor, the undisputed material facts foreclose her retaliation claim as a matter of law under the *McDonnell Douglas* framework. First, as explained above, Sheriff Cogen lacked actual knowledge, before the challenged decision, that the addendum had named him personally; Plaintiff's contrary evidence—an undeveloped deposition passage and the post-November 30 legal review—does not disturb that record. Second, and independently, Plaintiff cannot show that Sheriff Cogen's rationale for reorganizing five at-will command employees, including Plaintiff, was pretextual; the circumstances she cites do not establish that protected activity was the but-for cause of her removal.

## PLAINTIFF'S OPPOSITION MISCHARACTERIZES THE RECORD

Plaintiff's opposition does not identify a genuine factual dispute so much as recharacterize undisputed facts and stack inference upon inference. Sheriff Cogen responds below to Plaintiff's material mischaracterizations.

### A. Plaintiff's central factual claim—that Cogen's deposition testimony allegedly conflicts with his interrogatory answer regarding when he learned of the addendum—does not survive the full record.

Plaintiff's entire causation theory for the December 27, 2022 termination rests on a single passage: Sheriff Cogen's testimony that "some time afterwards I found out that . . . I was amended in." (ECF No. 36 at 5, 8, 14 (quoting ECF No. 36-1 at 10-11 (Cogen Dep. 174:3-175:17)).) Plaintiff represents Cogen's testimony as placing Cogen's knowledge of the addendum between November 30 and December 27, 2022, seemingly contradicting his interrogatory answer that he learned of the addendum's substance in August 2023.

The full transcript forecloses Plaintiff's interpretation. The passage itself was never pinned down: Counsel never asked what "amended in" meant, when it occurred, or how it related to the addendum specifically naming him. Defense counsel resolved any ambiguity on redirect—testimony Plaintiff's opposition does not mention—by asking Sheriff Cogen: "there was . . . some testimony and some questioning about when you became aware of Ms. Tapp-Harper's internal EEO complaint versus when you became aware of the substance which is, you know, your name being a part of it. On November 30th of 2022, when you suspended Ms. Tapp-Harper, did you have any information or knowledge regarding the substance of her EEO complaint?" Sheriff Cogen answered, "No." Asked to confirm "you did not learn of that—the substance of Ms. Tapp-Harper's EEO complaint until August of 2023, which was stated in your interrogatories," he answered, "Yes." (ECF No. 33-4 at 16 (Cogen Dep. 317:4–19).) He then confirmed that when he "suspended . . . and then subsequently terminated her," he "was not" aware of the contents of her internal EEO complaint. (ECF No. 33-4 at 17 (Cogen Dep. 318:12–17).)

Sheriff Cogen's Rule 36 admissions, served on August 20, 2026—after his deposition—again confirm the same account twice, in response to two separately worded requests. Asked to admit that, on November 30, 2022, he "knew that Plaintiff had previously filed an EEO-related complaint," he responded: "Denied as phrased; on November 30, 2022, Defendant learned for the first time that Plaintiff had previously filed an internal EEO-related complaint but did not learn of its substance until August 2023, when Plaintiff filed a federal EEOC complaint naming the Defendant." (ECF No. 36-3 at 6 (Resp. RFA B.8).) Asked whether, before termination, he knew Plaintiff's promotion "had been associated with resolution of an EEO complaint," he admitted only that he knew of the settlement's existence, and separately stated: "Denied to the extent the Request implies Defendant was aware, before termination, of the substance of the Amended EEO

Complaint naming him individually; Defendant did not become aware of that document until August 2023." (ECF No. 36-3 at 6 (Resp. RFA B.10).) Notably, Plaintiff's own opposition cites RFA B.8 and B.10 for the unremarkable proposition that Cogen knew *an* EEO complaint existed—a fact Sheriff Cogen has never disputed—while omitting the very sentences in those same admissions that foreclose her theory that he knew *he had been named*. (ECF No. 36 at 8.)

At most, the deposition passage on which Plaintiff relies is an undeveloped answer, not a considered, definitive account of timing that conflicts with Sheriff Cogen's sworn interrogatory answer, his Rule 36 admissions, and his own unambiguous clarification on redirect. That is not the kind of "conflicting testimony" that creates a jury question.

### B. The undated pre-November 30 decision does not create a knowledge-timing dispute; it forecloses one.

Plaintiff argues that because Sheriff Cogen "could not say when he 'specifically decide[d]'" to suspend the five employees, a jury could find the decision was not final until after he acquired knowledge. (ECF No. 36 at 15 (quoting ECF No. 33-4 at 15 (Cogen Dep. 315:2–21)).) The full passage shows the opposite: Sheriff Cogen testified that the decision was made "prior to us coming in," that "we knew we were going to do that when we arrived that day," and that "the replacements were all there" on November 30. (ECF No. 33-4 at 15 (Cogen Dep. 315:5–14).) The imprecision is only as to the exact calendar date within a window that Sheriff Cogen's own Rule 36 admissions place between the July 19, 2022 primary and the November 30, 2022 swearing-in—a period that necessarily predates any knowledge Sheriff Cogen had of even the *existence* of an EEO complaint, let alone its substance. (*See* ECF No. 36-3 (Def.'s Resp. RFA B.5, 6, 8).)

### C. The "own staff" reason is not undermined by the fact that Cogen later sought legal advice about implementation.

Plaintiff characterizes Sheriff Cogen's request for legal advice on "following through with the termination" as evidence that the decision remained genuinely open after November 30. (ECF

No. 36 at 9, 15 (quoting ECF No. 33-4 at 9 (Cogen Dep. 206:1-25)).) The full testimony forecloses that interpretation. Sheriff Cogen testified that the request for advice concerned "whether or not there was anything that prevented us . . . from following through with the termination," and that "that was going to happen anyway before I knew that there was—this letter even existed." (ECF No. 33-4 at 9 (Cogen Dep. 206:18–25).) Seeking legal advice before executing a personnel decision already made is not evidence of an undecided question; it is evidence of prudence. Plaintiff identifies no testimony, admission, or document suggesting the substance of the decision—as opposed to its legal implementation—was reconsidered after November 30, and Sheriff Cogen's own account of the reason for terminating Plaintiff never wavered: "[t]hat I didn't want to reappoint her. I wanted to bring my own staff in." (ECF No. 33-4 at 17-18 (Cogen Dep. 318:25–319:1).)

### D. Sheriff Cogen's own Rule 36 admissions undercut, rather than support, Plaintiff's selective-treatment theory.

Plaintiff asserts that Sheriff Cogen "did not hold a comparable transition discussion with Plaintiff" regarding her future in his administration, contrasting that with his retention of Jae Kim. (ECF No. 36 at 21 (citing, in pertinent part, ECF No. 36-3 (Def.'s Resp. RFA B.16–17, B.22)).) But the very admission Plaintiff cites discloses a fact her opposition omits: "Admitted; although a conversation in January 2022 did happen between the Defendant and Plaintiff regarding Plaintiff having a role in the Defendant's office upon swearing in on November 30, 2022." (ECF No. 36-3 at 8 (Def. Resp. RFA B.22).) Far from showing that Sheriff Cogen disregarded Plaintiff or singled her out, the record shows he discussed her potential role in his administration directly with her—months before the primary election and nearly a year before he was sworn into office.

### E. The September 2 email does not support an inference of retaliatory motive.

Plaintiff characterizes Cogen's September 2, 2022 email as evidence of animus because it demanded an "immediate halt" to promotions to avoid "last-minute political favors." (ECF No. 36 at 7, 16.) The full email requested a pause not only on promotions but on hiring, non-essential purchasing, uniform orders, and collective-bargaining negotiations—a standard slate of good-government transition requests addressed to the entire outgoing administration, sent to multiple recipients including Plaintiff, Henry Martin, and Eness Brown, not to Plaintiff individually. (ECF No. 33-9 (Sept. 2, 2022 Email).) The email says nothing about EEO activity, and Plaintiff does not dispute that Sheriff Cogen had no legal authority to enforce it or that Plaintiff's promotion proceeded, uninterrupted, for nearly three more months. An unremarkable transition request addressed to an entire outgoing command staff, months before any knowledge of Plaintiff's protected activity, is not evidence that Plaintiff was targeted.

## ARGUMENT

### A. Sheriff Cogen Lacked Actual Knowledge That the EEO Addendum Named Him Personally at the Time of the Challenged Decision, and Plaintiff's Contrary Evidence Does Not Create a Genuine Dispute.

Under *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998), a plaintiff's prima facie case fails absent evidence that the relevant decisionmaker actually knew of the protected activity at issue. Sheriff Cogen does not dispute that he learned, on November 30, 2022, that Ms. Tapp-Harper had filed an internal EEO complaint resolved by settlement. (*See, e.g.*, ECF No. 33-8 at 5 (Def.'s Ans. to Interrog. No. 6).) What the uncontradicted weight of the record forecloses is the narrower fact Plaintiff's own causal theory requires: that Sheriff Cogen knew, before he suspended or terminated her, that the addendum specifically *named*

*him*. The record places that knowledge in August 2023, after both the November 30 suspension and the December 27 termination.

Sheriff Cogen's November 30 knowledge of the existence of an EEO complaint does not establish that the complaint caused the termination, particularly where the record establishes that the challenged personnel decision predated that knowledge and where Plaintiff's specific pleaded theory depends upon Cogen retaliating because Plaintiff accused him personally of being responsible for the disparate application of the training-reimbursement policy. The record contains no evidence that this specific allegation played any role in the preexisting decision to remove Plaintiff.

**1. Plaintiff's "mastery of every allegation" framing mischaracterizes the motion.**

Plaintiff argues that Sheriff Cogen's motion improperly demands that he have known "every detail" of the addendum. (ECF No. 36 at 12.) That is not the argument. The motion rests on the undisputed fact that Sheriff Cogen did not know *he had been named* in the addendum at all—not merely that he lacked granular detail about its contents. Knowing that *an* EEO complaint existed, without more, does not establish knowledge that the complaint accused the decisionmaker personally, particularly where, as here, Plaintiff's own causal theory in the amended complaint is expressly grounded in Sheriff Cogen's *personal* exposure over the recoupment policy. (ECF No. 10 at ¶ 22.) A decisionmaker cannot retaliate for an accusation he does not know was made against him.

**2. A decision made without knowledge does not become knowledge-driven merely because its formal execution came later.**

Plaintiff's opposition treats the November 30 suspension and the December 27 termination as though the relevant question were only the date of the paperwork. (*See* ECF No. 36 at 9, 14-15.) It is not. The causation inquiry asks when the decision to remove Plaintiff was made and

whether the decisionmaker knew of her protected activity at that time; a decisionmaker's later compliance with legal review of a decision he has already made is not a fresh act of decision making that restarts the causation clock. That is precisely what the record shows here: Sheriff Cogen testified that the personnel decision affecting all five employees "was going to happen anyway" before the settlement agreement existed, that he told the Attorney General's Office he had "already intended to terminate" Plaintiff when he sought guidance, and that—short of advice to the contrary—the decision he had already reached was "the decision." (ECF No. 33-4 at 9 (Cogen Dep. 206:18–25); ECF No. 36-1 at 22 (Cogen Dep. 271:8–25).) Plaintiff identifies no evidence that legal counsel's review touched, let alone reconsidered, the underlying personnel judgment; her own citations show only that Sheriff Cogen sought confirmation that nothing *prevented* him from carrying out a decision he had already made. Implementation of a previously made decision, following a legally required review period, is not evidence that the decision itself was caused by information learned during that review.

### B. Even if Knowledge Were Assumed, the Undisputed Uniform Reorganization of Five At-Will Employees Independently Defeats But-For Causation, and Plaintiff Has Identified No Evidence of Pretext.

Sheriff Cogen's stated reason—that he suspended and later terminated five at-will, command-level holdovers, replacing them with his own appointees as part of a reorganization decided before he took office—is undisputed in its essential particulars. Plaintiff was one of five employees relieved by the same directive on the same morning; four of the five had no EEO complaint or protected activity of their own; and replacements for all five were in place that day. Plaintiff does not dispute that an incoming sheriff may lawfully appoint his own command staff. Under *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 360 (2013), Plaintiff ultimately must establish that the protected activity was the but-for cause of the challenged action. A reorganization that treats the Plaintiff no differently than similarly situated

employees who share none of her protected characteristics or activity is powerful evidence that the protected activity was not the but-for cause of her removal.

**1. Plaintiff has not shown the stated reason to be unworthy of credence.**

A plaintiff defeats a legitimate, nondiscriminatory reason only with evidence that it is "unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000). Plaintiff argues that Sheriff Cogen's reason shifted because he identified no contemporaneous selection memorandum or objective criteria and because his testimony "alternates among termination, non-reappointment, installing his 'own staff' . . . own people, and perceived political/policy alignment." (ECF No. 36 at 9–10, 19-20.) But an absence of a written selection memorandum, a termination letter that recited only at-will status, and Sheriff Cogen's use of related but not identical phrases ("didn't want to reappoint her," "bring my own staff in," "own people") describe an employer who did not memorialize an informal command decision in writing, not an employer whose stated reason shifted. Stated differently, the absence of a written selection memorandum does not, standing alone, establish that the stated reason was false. Nor do Cogen's references to non-reappointment, bringing in his own staff, and bringing in his own people describe materially different explanations; they describe the same asserted personnel decision.

**2. At-will authority does not assist Plaintiff, and *Barbour* is procedurally inapposite.**

The principle that a court does not "sit as a kind of super-personnel department weighing the prudence of employment decisions" is settled Fourth Circuit law. *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998); *see also Barbour v. Garland*, 105 F.4th 579, 592 (4th Cir. 2024) (recounting the same principle). Plaintiff cites *Barbour* for the proposition that this maxim does not foreclose inquiry into an employer's stated reason. (ECF No. 36 at 22.) *Barbour* does not assist Plaintiff at this stage: it reversed a Rule 12(b)(6) dismissal because the plaintiff there was

held, before any discovery, to an evidentiary standard of pretext that applies only after discovery—not because the panel rejected the super-personnel-department principle itself. 105 F.4th at 598-600. By contrast, discovery has closed here, and Plaintiff still has not identified evidence that the stated reason was false.

### C. Plaintiff's Suspension-Based Theory Fails for the Same Reasons and Does Not Independently Salvage Her Claim.

Plaintiff argues that even if the December 27 termination is foreclosed, the November 30 suspension independently survives because Sheriff Cogen "maintained information channels" with former colleagues and the September 2 email bears on motive. (ECF No. 36 at 7, 16.) Neither argument withstands scrutiny. Plaintiff's argument on "information channels" is speculative on its face. Plaintiff does not identify what was communicated, when, or by whom, and she does not contend that any such communication included the substance of Plaintiff's EEO complaint—the very knowledge Sheriff Cogen's Rule 36 admissions and redirect testimony, discussed above, foreclose. The September 2 email is a generic transition request untethered to any knowledge of protected activity, sent months before Sheriff Cogen learned an EEO complaint existed. Plaintiff's own deposition testimony that she does not know who, if anyone, told Sheriff Cogen about her complaint before he took office (ECF No. 33-6 at 9-10 (Tapp-Harper Dep. 95:1–96:17)) is not affirmative evidence of anything; it is an admission of the evidentiary gap that defeats her claim.

### D. Plaintiff Has Not Responded to Sheriff Cogen's Argument that He Had No Personal Stake in the Recoupment Policy, and the Concession Narrows the Case Substantially.

Plaintiff's opposition does not dispute that Sheriff Cogen never administered or enforced the training-reimbursement recoupment policy, that he was merely asked to research and present the issue at a single 2021 meeting, or that BCSO took no recoupment action against any employee between 2019 and 2022. (*See* discussion in ECF No. 33-1 at 17.) Plaintiff instead argues these

facts are legally irrelevant because they go only to "how a jury evaluates motive." (ECF No. 36 at 12.) But motive is precisely what Paragraph 22 of the amended complaint puts at issue: Plaintiff's sole pleaded causal theory is that Sheriff Cogen retaliated because the addendum named him "responsible for the disparate application of agency policy" on recoupment. (ECF No. 10 ¶ 22.) An undisputed absence of any personal or reputational stake in that policy—now conceded by Plaintiff's failure to respond—removes the only motive her own complaint identifies, independent of the knowledge and reorganization arguments above. *See, e.g., Carrier v. VCA Animal Hosps., Inc.*, CIV.A. DKC 11-0129, 2012 WL 3536758, at *11 (D. Md. Aug. 13, 2012) ("If a party moves for summary judgment concerning claims for which the non-moving party bears the ultimate burden of proof and the non-moving party fails to address specifically the movant's arguments regarding those claims, then the court may consider those claims abandoned and grant summary judgment.") (internal citations omitted). The record supplies no evidence that Cogen understood himself to have been accused of misconduct concerning a policy he administered, or that the allegation affected his personnel decision.

## CONCLUSION

For these reasons and those stated in Sheriff Cogen's opening memorandum, the Court should grant summary judgment in Defendant's favor on Count III.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Rachel L. Stewart
RACHEL L. STEWART
Federal Bar No. 27352
Assistant Attorney General
200 St. Paul Place
Baltimore, Maryland 21202
rstewart@oag.maryland.gov
(410) 576-7934
(410) 576-6393 (facsimile)

September 16, 2026

Attorneys for Defendant